In re John C. PIERCHOSKI, Debtor.

John C. PIERCHOSKI, Plaintiff,

v.

INTERNAL REVENUE SERVICE, Defendant.

Bankruptcy No. 96–22017–BM.
Adversary No. 97–2414–BM.

United States Bankruptcy Court,
W.D. Pennsylvania.

April 8, 1998.

John C. Pierchoski, Pro se.

Angelo A. Frattarelli, Justice Department, Tax Division, Washington, DC, for Defendant.

### MEMORANDUM OPINION

BERNARD MARKOVITZ, Chief Judge.

Cross-motions for summary judgment by debtor and Internal Revenue Service ("IRS") are before us.

IRS contends that a prepetition tax debt owed to it by debtor falls within the scope of the exception to discharge set forth at 11

U.S.C. § 523(a)(1)(B)(i) because debtor never filed required tax returns and that it therefore is entitled to summary judgment in its favor.

Debtor contends that the tax debt does not fall within the scope of the exceptions to discharge set forth at 11 U.S.C. § 523(a)(1)(B)(i) or § 523(a)(1)(B)(ii) and that he therefore is entitled to summary judgment in his favor. Debtor insists that he filed the required tax returns and that he did so more than two years before filing his bankruptcy petition.

We will enter summary judgment in favor of debtor and against IRS. For reasons set forth in detail below, we reluctantly conclude that neither of the exceptions to discharge set forth at 11 U.S.C. § 523(a)(1)(B)(i) and § 523(a)(1)(B)(ii) applies in this case. To put the decision of this court into succinct terms, we believe the debtor, albeit late, inserted information onto the forms provided by the IRS so as to allow the IRS to know the sums due; debtor executed said returns under penalty of perjury and mailed same to the address mandated. This action seems to fulfill the requirements of the Internal Revenue Code.

The IRS has its protections and/or remedies including, *inter alia*, criminal sanctions or tolling provisions. If there is a need for Congressional action then surely the IRS has an effective voice. Unfortunately, counteraction in the case at hand is too little, too late.

–FACTS–

Debtor has worked as an engineer for more than thirty-five years. According to wage and tax statements (Form W–2) prepared by his employer, debtor's annual gross wages from 1983 through 1989 were as follows:

| | |
|---|---|
| 1983: | $ 34,999.00 |
| 1984: | 35,067.00 |
| 1985: | 35,908.00 |
| 1986: | 38,636.00 |
| 1987: | 40,509.00 |
| 1988: | 38,470.00 |
| 1989: | 42,962.00 |

Debtor did not file federal income tax returns for these tax years within the time period prescribed by law.

After determining that a deficiency existed in debtor's federal income tax due for these tax years, IRS issues notices of deficiency. IRS proposed assessing income taxes against debtor in the following amounts for the following tax years:

| | |
|---|---|
| 1983: | $ 7,908.00 |
| 1984: | 7,499.00 |
| 1985: | 7,604.00 |
| 1986: | 8,396.00 |
| 1987: | 8,480.00 |
| 1988: | 7,067.00 |
| 1989: | 8,194.00 [1] |

IRS relied upon the wages and tax statements for these tax years prepared and submitted by debtor's employer in arriving at these amounts.

Shortly after IRS issued the above notices of deficiency, debtor brought an action in the United States Tax Court contesting the deficiencies.

Debtor and IRS entered into a stipulation during the litigation wherein they agreed to the above deficiencies in income tax owed by debtor for the above tax years. They further stipulated to the applicable penalties and interest and agreed that debtor was entitled to prepayment credits in certain specified amounts for each of the tax years. The Tax Court approved the stipulation and entered it on the docket on June 16, 1993.

On September 13, 1993, IRS assessed tax liabilities for each of the above tax years in the amounts set forth in the stipulation.

In October of 1993, debtor submitted 1040 forms signed under penalty of perjury for each of the above tax years. The forms submitted shared certain features in common.

Aside from debtor's name, address, and social security number, the only entries on the forms were: the amount of debtor's wages (line 7); the total tax due (line 56); the amount of federal income tax withheld

---

1. In addition to these amounts, IRS proposed assessing various penalties and interest for each of the above tax years.

(line 57); total payments made (line 64); and the amount of tax owed by debtor (line 68).

The entries on line 7 were taken from W–2 statements issued by debtor's employer. The entries on lines 56, 57, 64, and 68 were derived from the above stipulation. Each of these latter entries was followed by an asterisk and was accompanied by the following notation at the bottom of the page:

*See Attached U.S. Tax Court Decision, Docket No. 12668–92.

The stipulation and a copy of debtor's W–2 statement were attached to each Form 1040.

Debtor and IRS entered into an agreement in February of 1994, wherein debtor would pay IRS the sum of $1,400.00 per month until his tax debt was paid in full. The payments were to be applied to debtor's outstanding obligations as set forth in the above stipulation.

Pursuant to the agreement, debtor made monthly payments to IRS through March of 1996 in the amount of $1,400.00. He stopped making payments after a dispute broke out concerning whether IRS had credited a payment debtor claimed to have made. The payments made to IRS during this period totaled in excess of $30,000.00.

On April 19, 1996, some thirty months after submitting the above 1040 forms to IRS in October of 1993, debtor filed a voluntary chapter 7 petition. His purpose in filing for bankruptcy was to have the debt owed to IRS discharged. IRS was listed on Schedule F, Creditors Having Unsecured Nonpriority Claims, as having an undisputed claim in the amount of $93,430.00. No other creditors were listed on the schedules as having claims against the bankruptcy estate.

Debtor was granted a discharge and a final decree closing the bankruptcy case was entered on November 27, 1996.

Subsequent to entry of the discharge and final decree, IRS levied against debtor's wages in an attempt to collect unpaid income taxes, penalties, and interest for the above tax years.

On June 17, 1997, debtor brought a *pro se* motion to reopen his bankruptcy case for the purpose of bringing an adversary action against IRS. In support of his motion debtor alleged that IRS had "ignored the bankruptcy discharge"; had attempted to garnish his wages; and that he needed to file an adversary action "to get them to pay attention to the bankruptcy discharge".

IRS opposed the motion to reopen. It insisted that the general discharge debtor had received on November 27, 1996, did not apply to the debt he owed to IRS because debtor had not filed the required tax "returns".

Debtor was granted leave to reopen after notice and a hearing on August 15, 1997, for the limited purpose of bringing an adversary action against IRS within thirty days.

On September 11, 1997, debtor brought the above adversary action *pro se* seeking a determination that the tax debt he owed to IRS, including penalties and interest, had been discharged.

IRS brought a motion for summary judgment in the above adversary action on January 16, 1998. The tax debt at issue in this case, IRS asserted, falls within the scope of the exception to discharge set for at 11 U.S.C. § 523(a)(1)(B)(i). In particular, it maintains that the 1040 forms debtor filed in October of 1993 do not qualify as "returns" for purposes of § 523(a)(1)(B)(i).

Debtor responded with a summary judgment motion of his own on January 20, 1998. The above tax debt, he contends, does not fall within the scope of 11 U.S.C. § 523(a)(1)(B). The 1040 forms submitted in October of 1993, debtor continues, constitute "returns" for purposes of § 523(a)(1)(B). Moreover, they were filed after the last date on which they were due but more than two years prior to the filing of the chapter 7 petition.

A hearing on the cross-motions for summary judgment was conducted on February 26, 1998. Both debtor and IRS agreed that there were no disputed material facts and asserted they would offer nothing at trial above and beyond what they had offered in support of their respective motions. They urged us to decide the merits of this case on the basis of the record as it presently exists.

–DISCUSSION–

As a general matter, a chapter 7 individual debtor receives a discharge of personal liability for all prepetition debts. 11 U.S.C. § 727(a). There are, however, certain exceptions to this general rule. Subsection 523(a)(1)(B) of the Bankruptcy Code (11 U.S.C. § 523(a)(1)(B)), for instance, provides as follows:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—
>
> (1) for a tax . . .—
>
> (B) with respect to which a return, if required—
>
> (i) was not filed; or
>
> (ii) was filed after the date on which such return was last due . . . and after two years before the date of the filing of the petition. . . .

In other words, a chapter 7 individual debtor is not discharged from a tax debt if a required return either was not filed or was filed after the date on which it was last due but less than two years prior to the filing of the bankruptcy petition.

It is undisputed that debtor was required to file federal income tax returns for tax years 1983 through 1989 and that he failed to do so on or before the last dates on which they were due. Debtor instead submitted 1040 forms to IRS in October of 1993, approximately one month after IRS had assessed tax liabilities for each of these tax years on September 13, 1993.

**A) Summary Judgment Motion Of IRS.**

IRS argues that it is entitled to summary judgment and that the above tax debt owed by debtor is not discharged because the exception to discharge set forth at 11 U.S.C. § 523(a)(1)(B)(i) applies in this case. It maintains that debtor did not file any tax "returns" for purposes of § 523(a)(1)(B).

As far as we are able to discern, IRS' contention that debtor did not file the required "returns" is based on two (possibly interrelated) arguments.

1. *First Argument*

The federal income tax system is based upon voluntary self-assessment by taxpayers. A tax return is the device for implementing this system. The purpose of a tax return is not merely to gather tax information in some form but to provide sufficient uniformity and completeness so that the tasks of handling and verifying returns may be readily accomplished. *See Commissioner v. Lane–Wells Co.*, 321 U.S. 219, 223, 64 S.Ct. 511, 513, 88 L.Ed. 684 (1944).

IRS argues that the 1040 forms debtor submitted in October of 1993 do not qualify as "returns" for purposes of § 523(a)(1)(B) because they were filed **after** IRS had assessed debtor's taxes for tax years 1983 through 1989. To hold otherwise, IRS insists, would defeat the purpose served by the filing of federal income tax returns. As authority for its position, IRS calls our attention to *In re Arenson*, 134 B.R. 934 (Bankr. D.Neb.1991), *aff'd*, 145 B.R. 310 (D.Neb. 1992), and *In re Gentry*, 76 A.F.T.R.2d 95–6063, 1995 WL 644045 (Bankr.M.D.Tenn. 1995).

This argument is without merit. Subsection 523(a)(1)(B) contains no requirement that a filing must be submitted prior to the assessment of taxes by IRS for it to qualify as a "return" in the requisite sense. In so holding, we adopt the reasoning of *In re Hindenlang*, 205 B.R. 874, 876–78 (Bankr. S.D.Ohio), *aff'd*, 214 B.R. 976 (S.D.Ohio 1997).

Because we are dealing with the issue of dischargeability of a tax debt in a bankruptcy context, we must first look to the language and structure of § 523(a)(1)(B) when determining whether it contains such a requirement. IRS would have us instead first take into account policy considerations underlying the tax scheme as set forth in the Internal Revenue Code and its implementation. Such considerations are not controlling in this instance, especially if they lead to a conclusion that conflicts with the express language or structure of the Bankruptcy Code.

The express language of § 523(a)(1)(B) sets forth no such requirement as IRS would have us adopt. Acceptance of IRS' position

would require us to read into § 523(a)(1)(B) a significant condition that goes well beyond what is expressly stated therein. *In re Hindenlang*, 205 B.R. at 878.

The only express statement set forth in § 523(a)(1)(B) concerning **when** a tax return must be filed in order for tax liability for a given tax year to be discharged is set forth at § 523(a)(1)(B)(ii). It requires only that the "return" be filed after the last date on which it is due but at least two years before the bankruptcy filing. The provision is silent as to the temporal relationship between the filing of a "return" and the assessment of tax liability by IRS.

Congress was cognizant of the significance of the role of assessment of income tax liability when it enacted the Bankruptcy Code. Subsection 507(a)(8), for instance, makes reference to assessment. We infer from the inclusion of the role of assessment in § 507(a)(8) [2] but not in § 523(a)(1)(B)(ii) that Congress intended to permit the filing of a tax "return" to occur for purposes of § 523(a)(1)(B)(ii) without regard to when it occurred in relationship to assessment of tax liability by IRS. *In re Hindenlang*, 205 B.R. at 878.

There is a well-established rule of statutory construction, sometimes known as "the negative pregnant", which provides that if particular language is expressly included in one section of a statute and is omitted in another section of the same statute, it is presumed that Congress acted intentionally and purposely in the disparate treatment. *Gozlon–Peretz v. United States*, 498 U.S. 395, 404, 111 S.Ct. 840, 846–47, 112 L.Ed.2d 919 (1991).

This presumption is reinforced in this instance because exceptions to discharge must be strictly construed in favor of the debtor. *In re Fegeley*, 118 F.3d 979, 983 (3d

Cir.1997). Acceptance of IRS' position that a filing does not qualify as a tax "return" for purposes of § 523(a)(1)(B) if it was filed after IRS assessed tax liability would require us to construe § 523(a)(1)(B) in something less than a strict manner and in favor of IRS instead of debtor. *In re Hindenlang*, 205 B.R. at 878.

In our estimation, IRS has not overcome this especially strong presumption in favor of debtor. Moreover, its first argument in support of summary judgment would require us to run roughshod over a canon of statutory construction.

### 2. *Second Argument*

Debtor and IRS entered into a binding stipulation in the Tax Court proceeding wherein they agreed as to the amount of debtor's tax liability for tax years 1983 through 1989. The Tax Court approved the stipulation and entered it on its docket in June of 1993.

In September of 1993, some three months after the stipulation was entered into, IRS issued notices of assessment of debtor's tax liability for each of these tax years. The amounts assessed were identical to the amounts indicated in the stipulation.

In October of 1993, approximately one month after the assessments were made, debtor filed 1040 forms with IRS for tax years 1983 through 1989. The amounts entered on the forms were the same as those contained in the stipulations.

A filing must have the following attributes to qualify as a tax "return": (1) it must purport to be a return; (2) it must be sworn to as such; (3) it must contain sufficient data to allow calculation of the tax owed; and (4) it must appear on its face to be an honest and reasonable attempt to satis-

---

**2.** 11 U.S.C. § 507(a)(8) provides in relevant part as follows:

> (a) The following expenses and claims have priority in the following order:
>
> (8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—
>
> (A) a tax on or measured by income . . .—
>
> (ii) assessed within 240 days, plus any time plus 30 days during which an offer in compro-

mise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition; or

> (iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case.

fy the law. *See Germantown Trust Co. v. Commissioner,* 309 U.S. 304, 60 S.Ct. 566, 84 L.Ed. 770 (1940); *Zellerbach Paper Co. v. Helvering,* 293 U.S. 172, 55 S.Ct. 127, 79 L.Ed. 264 (1934).

IRS evidently concedes that the first three of these requirements are present in this case. It concedes that debtor filed what purported to be tax returns when he submitted 1040 forms for tax years 1983 through 1989; that he signed the forms under penalty of perjury; and that the submitted documents contained sufficient data to allow calculation of debtor's tax liability for those tax years. It instead denies that debtor made an "honest and reasonable attempt" to satisfy federal tax law when he filed the 1040 forms in October of 1993.

■ The basis for the assertion that the 1040s debtor submitted in October of 1993 do not constitute an "honest and reasonable attempt" to comply with the law is far from obvious. As far as we are able to determine from its brief, IRS does not contend that debtor failed to make an "honest and reasonable attempt" because he did not file the documents until many years after they were last due. IRS instead asserts that debtor did not make "an honest and reasonable attempt" in that the information contained in the 1040s debtor filed in October of 1993 merely "mirrored" IRS' prior assessments. This argument is without merit and may even be disingenuous.

Both debtor and IRS were bound by the stipulation approved and entered by the Tax Court in June of 1993. It is far more accurate and correct to say that the 1040s debtor filed, *as well as the assessments issued by IRS,* "mirrored" the provisions of the stipulation than it is to say that the former "mirrored" the latter. Just as the assessments by IRS were in accordance with the provisions of the stipulation, so also were the 1040s debtor filed in accordance with the stipulation.

In other words, debtor and IRS had agreed to what debtor's tax liabilities would be for tax years 1983 through 1989 prior to the assessments that were made in September of 1993 and prior to the filings that occurred in October of 1993. IRS knew what information debtor's 1040s would contain even before it assessed debtor's tax liabilities. To hold that debtor did not file a "return" because he did not adhere to prescribed procedures would require us to elevate procedure over substance. We are not willing to do so in this instance because debtor eventually did provide IRS with the required information several years before he filed for bankruptcy.

Based on the foregoing, we conclude that debtor did file tax "returns" for purposes of 11 U.S.C. § 523(a)(1)(B)(i) and that IRS' motion for summary judgment therefore must be denied.

## B) Debtor's Summary Judgment Motion.

Debtor takes the position that he is entitled to summary judgment and that the tax debt he owes to IRS therefore is discharged because neither of the exceptions to discharge set forth at § 523(a)(1)(B) applies in this case.

We previously determined when considering IRS' motion for summary judgment that the exception to discharge set forth at § 523(a)(1)(B)(i) does not apply. The 1040s debtor filed in October of 1993 were tax "returns" for purposes of § 523(a)(1)(B)(i).

The exception to discharge set forth at § 523(a)(1)(B)(ii) also does not apply to this case. Although they were filed after the dates on which they were last due, the tax returns debtor filed were not filed "after two years before the date of the filing of the petition". They instead were filed more than two years before the filing of debtor's chapter 7 petition on April 19, 1996.

Based on the foregoing, we conclude that the tax debt owed by debtor to IRS was **not** excepted from the general discharge granted to debtor on November 27, 1996.