In re Barbara J. WASHBURN, Debtor.

Barbara J. Washburn, Plaintiff,

v.

United States of America, Defendant.

Bankruptcy No. 01–15534–9P7.
Adversary No. 01–712.

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

July 16, 2002.

Jeffrey W. Leasure, Leasure & Heidkamp, P.A., Fort Myers, FL, for debtor.

Diane L. Jensen, Fort Myers, FL, Chapter 7 Trustee.

Philip Doyle, U.S. Department of Justice, Washington, DC, for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

The matter under consideration in this Chapter 7 Case, is "Motion by United States for Summary Judgment," filed by the United States of America (Government), in the above-captioned adversary proceeding. The Complaint, which is filed by Barbara J. Washburn (Debtor), seeks a determination by this Court that the tax obligations for the years of 1992, 1993, 1994, 1995, 1996 and 1997 are not within the exception of discharge set forth in 11 U.S.C. § 523(a)(1) because the returns (1) were due more than three years prior to the filing of the bankruptcy case; (2) were actually filed more than two years before the date of the filing of the Petition; and (3) were not assessed within the 240 days prior to the commencement of this case.

The Government, in its Motion, contends that there are no genuine issues of material facts, and based on the same, the liabilities of the Debtor for the tax years in question, are within the exception 11 U.S.C. § 523(a)(1)(B)(i).

The facts relevant to the resolution of the issue are indeed without dispute and can be summarized as follows. The Debtor, who is a widow, failed to file the required 1040 tax returns for the years indicated above. At all times relevant, the Debtor was a licensed real estate broker and worked as such since 1971. During the 1970's, the Debtor and her husband owned and operated a real estate firm in Michigan (Exh. 10, p. 13). Because of the husband's first major heart attack in 1979, they abandoned the Michigan brokerage firm and moved to Florida in 1981.

In Florida, each accepted positions as real estate sales persons and worked for other real estate companies. (Exh. 10, p. 10–14). In 1992, the Debtor's husband retired and received only social security retirement income, but the Debtor continued to be employed as a real estate broker and basically earned all of the income for

the couple in the year 1992. Prior to 1992, the Debtor and her husband filed joint federal income tax returns. In 1992, the couple moved to 7121–614 Golden Eagle Court, Ft. Myers, Florida. It was this address that they filed a joint 1991 income tax return.

In January 1993, the Debtor's husband died of a heart attack. After his death, the Debtor learned that a $40,000 life insurance policy, which she had counted on, did not exist. Moreover, she learned that they were indebted in excess of $40,000 in credit cards and she was not previously aware of this obligation. When the time came to prepare and file the 1992 federal income tax return in April of 1993, the Debtor approached an accountant for the purpose of discussing the filing of the return but she had difficulty in locating receipts and other relevant documents necessary for filing the tax return. No return was filed for the year 1992.

In September 1993, the Debtor moved from the Golden Eagle Court home. It is without dispute that the Debtor did not filed the required tax returns for the years 1994, 1995, 1996, and 1997. And, it is also without dispute that the Debtor did not notify the IRS of her change of address. According to her testimony given at her deposition, the Debtor stated that she did not file the 1992 return because she did not know how to do it and did not seek assistant of an accountant because she did not want to paint her husband in a bad light. It is also without dispute that in 1993, 1994, and 1995, she had sole control of her tax records, that she saved all records of her deductibles, notwithstanding, she did not file the tax returns because she was embarrassed of the situation she had created herself.

In 1995, the Debtor made a determined effort to pay off her creditors other than the Government. In fact, she managed to pay off a substantial amount on her credit card obligations in an amount of between $15,000 and $20,000. The Debtor made no voluntary payments at all towards her federal income tax liabilities. Between the years 1992 and 1995, there was no withholding payments or estimated payments made by the Debtor. In the year 1999 and 2000, the Debtor conditionally tendered to the Government the sum of $500, in connection with separate offers to compromise her unpaid income tax liabilities. The Debtor never contacted the IRS during the years 1993 and 1998. And, the IRS could not reach her since she had vacated her previous residence and moved to an address unknown.

The IRS repeatedly sent notices to the old address requesting that she file her returns. In July of 1994, September of 1994, October of 1994, and again November of 1994, the IRS sent delinquency notices to the Debtor. The IRS ultimately classified her as a NON–FILER and the IRS prepared an SFR or substitute for return (SFR). In 1997, the IRS issued a notice of deficiency, which was sent by certified mail to the Debtor's last known address for each of the years 1992, 1993, 1994, and 1995. On May 11, 1998, the IRS assessed income taxes against the Debtor the years of 1992, 1993, 1994, and 1995, on the basis of the SFR prepared by the service and made a formal notice and demand for payment.

In November 1998, the IRS served on the employer of the Debtor a Notice of Levy to collect her unpaid income tax liabilities for the years 1992 through 1995, in the amount of $131,453.48. Upon receipt of the Notice of Levy, the Debtor engaged the services of an accountant, went through her tax records, located her records concerning the year 1992 and with the help of the accountant prepared a 1040

for the years of 1992 up to and including 1997, and filed the same with the IRS.

Each of the forms (the 1040s) filed by the Debtor in 1998 for these years reported a lesser amount of tax than the IRS previously assessed based on the SFR. The IRS accepted the reduced amount and abated the payment of some of the taxes. The assessed balance owed by the Debtor for 1992, 1993, 1994 and 1995, crediting the abated amounts and exclusive of interest accrued for the dates of assessment are as follows:

| Year | Assessed Balance Due |
|------|----------------------|
| 1992 | $15,608.69 |
| 1993 | $19,567.42 |
| 1994 | $28,565.32 |
| total: | $65,098.77 |

In due course, the Debtor filed an Affidavit in opposition to the Government's Motion. The Debtor, in her Affidavit, contends that prior to her husband's death, her husband was responsible for household expenses including for the preparation and filing of the income tax returns. In her Affidavit, she states that in September of 1993, she moved from the residence located at 7121–614 Golden Eagle Court to 14887 West Point Drive, Ft. Myers, Florida. She also states that she filed a change of address form with the United States Post Office. Upon learning of the levy, the Debtor contacted Joanne C. Holt, CPA, who in turn, contacted an agent of the IRS. It is the Debtor's contention that the IRS agent told the CPA that she would have 10 days to file all delinquent tax returns. The Debtor contends that in reliance of this extension by the agent of the IRS, she retained Ms. Holt, who prepared the returns for the years in question, which were mailed to the IRS, Team C, at 400 West Bay Street, Suite 35087, Jacksonville, Florida.

In 1998, after the IRS imposed a levy, the Debtor made an Offer of Compromise and tendered $500, which was rejected by the IRS. Thereafter, the Debtor made an additional offer to settle her tax liability on May 24, 1999, for $14,000, which was rejected in August of 2000 by the IRS. Thereafter, she made an offer on November 7, 2000 for $3,600, which was also rejected in May 2001.

In the year 1992, the Debtor had gross income of $47,000 and an adjusted gross income of $31,000. In the year 1993, the Debtor had gross income of $64,000 and an adjusted gross income of $40,000. She also had gross receipts of $95,000, and adjusted income of $46,000. In 1995, the Debtor had $35,000 gross receipts.

As noted, the Debtor paid all of her creditors in full other than the IRS during the relevant time period. The Debtor is an intelligent and very knowledgeable person and well knew that she had a legal obligation of filing an income tax return for the years in question. The only defense that she was depressed because of the loss of her husband is not an acceptable defense that she failed to file the tax returns. Basically, these are the controlling facts of the ultimate issue which is whether the admitted liabilities of the Debtor for unpaid taxes is within the exception of Section 523(a)(1)(B)(i) of the Code and therefore not protected by the general bankruptcy discharge.

■ In many respects, the fact pattern in the present instance is similar to those considered by numerous courts where the tax payer relies on the proposition that if he or she files the required return after the IRS already made the assessment and filed on behalf of the tax payer the SFR, the tax payer's liability for unpaid taxes should be discharged. In the case of *In re Hindenlang*, 164 F.3d 1029 (6th Cir.1999), the Sixth Circuit held that the tax forms filed by the debtor tax payer after the IRS assessed deficiencies were not "returns"

for purposes of discharge exception for taxes for which the required return was not filed. The Court in *Hindenlang* also held that, as a matter of law, a document purporting to be a federal tax return is not a "return" if it serves no tax purpose and has no effect on the IRS.

In *Hindenlang*, the debtor failed to file a federal tax return for the years 1985 through and including 1988. The IRS sent a notice to the debtor of the proposed deficiency (a 30–day letter) for each year. When the debtor did not consent to the proposed liability, the IRS prepared an SFR for each of the years involved. In 1991, the IRS, after waiting the statutory prescribed 90 days, assessed the deficiencies against the debtor. In 1993, or two years after the assessment, the debtor sent to the IRS a form 1040, which purported to be his income tax return for the years in question. *Hindenlang*, 164 F.3d at 1031–1032. The debtor never filed the deficiency. On January 22, 1996, the debtor filed his Chapter 7 Petition. The debtor also commenced an adversary proceeding and sought a determination that his liabilities for unpaid taxes were within the protection of the general bankruptcy discharge. Both the debtor and the IRS filed motions for summary judgment. The bankruptcy court granted summary judgment for the debtor, which was affirmed by the district court. *See In re Hindenlang*, 214 B.R. 847 (S.D.Oh.1997).

■ The district court applied a four-part test to determine whether filing with the IRS constituted a return. Under this test, in order for a document to qualify as a return: (1) it must purport to be a return; (2) it must be executed under penalty of perjury; (3) it must contain sufficient data to allow calculation of the tax; and (4) it must represent an honest and reasonable attempt to satisfy the requirements of the tax law. *Hindenlang*, 164

F.3d at 1033 *quoting Hindenlang*, 214 B.R. at 848. The case relied on by the district court was derived from *Germantown Trust Co. v. Commissioner*, 309 U.S. 304, 60 S.Ct. 566, 84 L.Ed. 770 (1940) and *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172, 55 S.Ct. 127, 79 L.Ed. 264 (1934). Bankruptcy courts and others have uniformly adopted the test developed by the Supreme Court in *Zellerbach* and *Germantown*. The Court of Appeals in applying this test, found that the 1040 form submitted by the debtor was purported to be a return, it was executed under penalty of perjury, and the form included all data needed to calculate the tax payer's liability. In reversing the district court, the Court of Appeals held that as a matter of law, the form 1040 is not a "return" if it serves no tax purpose or has any effect on the Internal Revenue Code. *Hindenlang*, 164 F.3d at 1035. The Court of Appeals also held that the return was filed too late after the government had made the assessment and filed an SFR, and therefore, the return could not constitute an honest and reasonable attempt to satisfy the requirements of the tax law.

*Hindenlang* was followed by *In re Hatton*, 220 F.3d 1057 (9th Cir.2000), wherein the Ninth Circuit held that the term "return," as used in the statutory exception of discharge for tax debts, should be given strict construction and interpreted in accordance with its ordinary meaning. In applying the Supreme Court test, the court in *Hatton* concluded that neither a substitute return prepared by the IRS without any input or assistance of a chapter 7 debtor nor an installment agreement that the debtor agreed to sign only after the IRS threatened to levy his wages and seize his property qualified as a tax "return." *Hatton*, 220 F.3d at 1061. Therefore, the Ninth Circuit reversed the bankruptcy court and B.A.P.'s decision and held

that the debtor's tax liability was excepted from discharge.

The Chief Judge of this District also had an opportunity to consider the issue on appeal from the bankruptcy court in the case of *United States v. Ralph,* 266 B.R. 217 (M.D.Fla.2001). In *Ralph,* the bankruptcy court held (at 258 B.R. 504) that the documents that the debtor wife had filed with the assistance of an accountant in response to a tax amnesty program qualified as tax "returns" and therefore were sufficient to meet the discharge of her debts. On appeal, Chief Judge Kovachevich held that the return filed by the debtor after the filing of the SFR served no purpose, and therefore, did not constitute a "return" for dischargeability purposes.

Last year, this Court had the opportunity to consider the same issue in the case of *In re Sgarlat,* 271 B.R. 688 (Bankr. M.D.Fla.2001). This Court granted summary judgment to the Government and concluded that an untimely 1040 submitted by a debtor after the IRS made a formal assessment does not represent the honest and reasonable attempts of the debtor to satisfy the requirements of tax law. Thus, the document did not satisfy the requirement of a "return" for the purposes of dischargeability.

In the present instance, it is without dispute that the actual return was filed by the Debtor not only after the IRS filed an SFR but after the Government already served the Notice of Levy on the Debtor's employer. Clearly, under *Hindenlang,* that was not a return. Moreover, in the present instance, it is without dispute that the Debtor was very well aware of her obligations to file the return, having earned substantial taxable income in the years in question. Especially since the Debtor had sufficient funds to pay her creditors except the IRS. Yet, the fact of the matter is that once she consulted an accountant to do something about it, there was nothing done, and she did not file an actual return until the IRS filed the SFR and served a Notice of Levy.

In order to overcome the compelling reasoning of the cases cited, the Debtor attempts to show that due to her mental frame of mind, because of the loss of her husband, she was too upset to relieve the IRS problem. This proposition is completely belied by this record based on the undisputed facts that she had more than sufficient *compos mentis* to meet her other obligations and pay off her other creditors during the relevant years. The additional contention of the Debtor that the IRS agent gave her 10 days to file a return, thus the IRS is estopped to contend that she did not make a reasonable effort to comply with the tax laws, must also be rejected. It is true that the Debtor made three attempts to settle her tax liability with the Government, all of which were rejected. A similar claim was also rejected in the case of *Hatton, supra,* where the debtor entered into an installment agreement, which the debtor did sign but only after the IRS threatened to levy. In *Hatton,* the court held that neither the SFR nor the installment agreement qualified as a "return" for the purpose of dischargeability. In sum, this Court is satisfied that based on the undisputed facts, the Government established with the requisite degree of proof that the Debtor's liability for unpaid taxes for the years in question are within the exception for discharge under Section 523(a)(1)(B)(i) of the Code.

A separate final judgment will be entered in accordance to the foregoing.