OPINION
 

 MOORE, Circuit Judge.
 

 William C. Hindenlang, a Chapter 7 debtor in bankruptcy, seeks to discharge certain federal tax liabilities under 11 U.S.C. § 727. The United States argues that Hindenlang falls under the exceptions to discharge provision in 11 U.S.C. § 523(a)(1)(B), which prohibits discharge of taxes for which the debtor did not file a return. Here, Hindenlang filed Forms 1040 only after the Internal Revenue Service (“IRS”) had calculated its own assessment of Hindenlang’s liability by its authority under 26 U.S.C. § 6201, after which Hindenlang’s late-filed forms served no purpose under tax law, and therefore the United States argues that his Forms 1040 were no longer “returns” under § 523(a)(1)(B). The district court ruled in favor of Hindenlang. We hold that Hindenlang’s Forms 1040 were not returns, and we therefore REVERSE the judgment of the district court.
 

 I. FACTS AND PROCEDURE
 

 The basic facts are not in dispute. William Hindenlang did not file federal income tax returns for years 1985 through 1988. The IRS sent Hindenlang notice of proposed deficiency letters (“thirty-day letters”) for years 1985 through 1987 in April of 1990, and one such letter for the 1988 taxable year' in December of 1990. When the debtor did not consent to the proposed liability, the IRS prepared substitute returns (“Substitutes for Returns” or “SFRs”) for the relevant years and sent them to Hindenlang.
 
 See
 
 26 U.S.C. § 6020(b). Again Hindenlang neither responded to nor executed the SFRs, leading the IRS to send out formal notice of deficiency letters (“ninety-day letters”).
 
 [1]
 
 Hinden-lang did not file a petition in the Tax Court challenging any of these deficiency notices. Therefore, in 1991, after waiting the statutorily prescribed ninety days, the IRS assessed the deficiencies against Hindenlang.
 

 • Finally, in 1993, two years after assessment, Hindenlang sent the IRS what was purported to be individual income tax returns for the years in question.
 
 [2]
 
 Hindenlang used the proper Forms 1040,
 
 see
 
 26 C.F.R. § 1.6012-l(a)(6), and calculated the taxes substantially the same as in the SFRs previously prepared by the IRS. Hindenlang still did not pay any of the deficiencies.
 

 On January 22, 1996, Hindenlang filed a Chapter 7 bankruptcy petition. He then instituted an adversary proceeding seeking a bankruptcy court determination that the tax liability in question was dischargeable pursuant to 11 U.S.C. § 727(a).
 
 [3]
 
 Both parties moved for summary judgment. The bankruptcy court granted summary judgment to Hindenlang, and the district court affirmed.
 
 See United States v. Hindenlang (In re Hindenlang
 
 ), 214 B.R. 847 (S.D.Ohio 1997).
 

 II. ANALYSIS
 

 Bankruptcy court orders granting summary judgment are final appealable orders and are reviewable by the district court.
 
 See Oakland Gin Co. v. Marlow (In re Julien
 
 Company), 44 F.3d 426, 428 (6th Cir.1995). We have jurisdiction over bankruptcy appeals pursuant to 28 U.S.C. § 158(d), which authorizes appellate jurisdiction over final
 
 *1032
 
 decisions of the district courts that reviewed bankruptcy court determinations pursuant to § 158(a).
 

 A. Standard of Review
 

 The issue of whether Forms 1040 filed after the IRS has made an assessment can constitute returns for purposes of § 523(a)(1)(B) is a question of law, to be reviewed de novo.
 
 See Wesbanco Bank Barnesville v. Rafoth (In re Baker & Getty Fin. Servs.),
 
 106 F.3d 1255, 1259 (6th Cir.),
 
 cert. denied,
 
 — U.S. -, 118 S.Ct. 65, 139 L.Ed.2d 27 (1997). For purposes of summary judgment, this court must consider all the relevant facts in a light most favorable to the nonmoving party and determine whether the movant must prevail as a matter of law.
 
 See General Elec. Co. v. G. Siempelkamp GmbH & Co.,
 
 29 F.3d 1095, 1097 (6th Cir.1994). There are no material disputed fact issues in this case, so we proceed to the legal issue.
 

 B. Definition of Return Under § 523(a)(1)
 

 The issue in this case is the meaning of the word “return” under § 523(a)(1) of the Bankruptcy Code. The section reads:
 

 (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
 

 (1) for a tax or a customs duty—
 

 (A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed;
 

 (B) with respect to which
 
 a return,
 
 if required—
 

 (i) was not filed; or
 

 (ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or
 

 (C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.
 

 11 U.S.C. § 523(a)(1) (emphasis added).
 

 Under this provision, when a debtor files for bankruptcy, “tax on or measured by income or gross receipts” for the last three taxable years is not dischargeable.
 
 See
 
 11 U.S.C. §§ 507(a)(8)(A), 523(a)(1)(A). Furthermore, only taxes for which a return was filed more than two years before the petition for bankruptcy are dischargeable.
 
 See
 
 § 523(a)(l)(B)(ii). Finally, if “the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax,” the tax is not dischargeable.
 
 See
 
 § 523(a)(1)(C).
 

 This provision appears to serve two purposes. First, the requirement of a two-year waiting period after filing a late return but before seeking discharge prevents a debtor who has ignored the filing requirements of the Internal Revenue Code from waiting until the eve of bankruptcy, filing a delayed but standard tax return form, and seeking discharge the next day. It is, in a sense, a provision affording notice and an opportunity to act, giving the IRS time to seek payment by levy or court proceeding. Second, § 523 forbids discharge when the debtor has acted fraudulently or in a manner calculated to evade or defeat a tax. This corresponds with the notion that “good faith and candor are necessary prerequisites to obtaining a fresh start.”
 
 Industrial Ins. Servs., Inc. v. Zick (In re
 
 Zick), 931 F.2d 1124, 1129 (6th Cir.1991) (citation omitted).
 

 Hindenlang filed Forms 1040 for the years in question after the IRS had already made independent assessments of his tax liability. He waited the requisite two years required by § 523 before filing for bankruptcy. The government does not claim that the Forms 1040 were fraudulent in any respect. Finally, the government does not attempt to argue that the act of filing late Forms 1040, however delinquent, could be construed as an attempt to evade or defeat taxes due under § 523(a)(1)(C). The government’s argument is that once a taxpayer has been assessed a deficiency, a Form 1040 submitted by the taxpayer to the IRS no longer qualifies as a return under § 523(a)(1)(B). We are left, therefore, with the threshold question of what constitutes a return under § 523(a)(1)(B) of the Bankruptcy Code.
 

 We think it is appropriate to look to the Internal Revenue Code to determine the proper definition of return. The Bankruptcy
 
 *1033
 
 Code simply adopts the term “return” without defining it further, and there is no reason to presume the Bankruptcy Code sought to encompass as a return any document, form, paper, or the like that would not qualify as a return under the applicable tax law.
 
 [4]
 

 The Internal Revenue Code, which liberally uses the concept of returns, does not formally define “return.” Under 26 U.S.C. § 6011(a), titled the “[g]eneral requirement of return, statement, or list,” the Code provides:
 

 [w]hen required by regulations prescribed by the Secretary any person made liable for any tax imposed by this title, or with respect to the collection thereof, shall make a return or statement according to the forms and regulations prescribed by the Secretary. Every person required to make a return or statement shall include therein the information required by such forms or regulations.
 

 See also
 
 26 C.F.R. § 1.6011-l(a), (b). Most individuals are required to file returns.
 
 See
 
 26 U.S.C. § 6012. As the Supreme Court has stated, “[t]he purpose [of the return] is not alone to get tax information in some form but also to get it with such uniformity, completeness, and arrangement that the physical task of handling and verifying returns may be readily accomplished.”
 
 Commissioner v. Lane-Wells Co.,
 
 321 U.S. 219, 223, 64 S.Ct. 511, 88 L.Ed. 684 (1944). “[I]t is clear that the existing tax system could not function properly if the great majority of taxpayers did not report the correct amount of tax without the government’s prior determination of tax liability.” BERNARD Wolfman, James P. Holden, Kenneth L. Harris, Standards of Tax Practice § 201 (1995). Although the general view is that substantial compliance is sufficient to comply with the law,
 
 see
 
 Boris I. Bittker
 
 &
 
 Martin J. McMahon, Jr., Federal Income Taxation of Individuals § 40.1 (1988), the Internal Revenue Code does not specifically set out how accurate, thorough, or complete the requisite form must be in order to qualify as a return under the many sections of the Code that reference a return. The Code also does not specify when a late tax form will no longer qualify as a return under the tax law.
 

 The district court applied a four-part test to determine whether a filing with the IRS constitutes a “return.” In order for a document to qualify as a return: “(1) it must purport to be a return; (2) it must be executed under penalty of perjury; (3) it must contain sufficient data to allow calculation of tax; and (4) it must represent an honest and reasonable attempt to satisfy the requirements of the tax law.”
 
 Hindenlang,
 
 214 B.R. at 848.
 

 This test was derived from two Supreme Court cases:
 
 Germantown Trust Co. v. Commissioner,
 
 309 U.S. 304, 60 S.Ct. 566, 84 L.Ed. 770 (1940), and
 
 Zellerbach Paper Co. v. Helvering,
 
 293 U.S. 172, 55 S.Ct. 127, 79 L.Ed. 264 (1934). In
 
 Germantown,
 
 the Court was asked to decide whether' a fiduciary Form 1041 filed by the petitioner, that stated no tax was due, qualified as a return under § 275(a) of the Revenue Act of 1932.
 
 Id.
 
 at 306, 60 S.Ct. 566. The determination would control the onset of the limitations period for assessing a deficiency.
 
 Id.
 
 at 307, 60 S.Ct. 566. The Court held “that where a fiduciary, in good faith, makes what it deems the appropriate return, which discloses all of the data from which the tax ... can be computed,” a proper return has been filed.
 
 Id.
 
 at 309, 60 S.Ct. 566. The Court in
 
 Zeller-bach,
 
 also discussing the' date at which the limitations period against the IRS begins to run for deficiency assessments, held that “[pjerfect accuracy or completeness is not necessary to rescue a return from nullity, if it purports to be a return, is sworn to as such, and evinces an honest and genuine endeavor to satisfy the law.” 293 U.S. at 180, 55 S.Ct. 127.
 

 The Tax Court, in
 
 Beard v. Commissioner,
 
 82 T.C. 766, 1984 WL 15573 (1984),
 
 aff'd,
 
 793 F.2d 139 (6th Cir.1986), combined the principles of
 
 Zellerbach
 
 and
 
 Germantown
 
 to arrive at the four-part test quoted above.
 
 See
 
 82 T.C. at 777. A number of bankruptcy courts, and others, have since adopted or approved of this basic format.
 
 See, e.g., Billman v. Internal Revenue Serv. (In re
 
 Billman), 221 B.R. 281, 282 (Bankr.S.D.Fla.1998);
 
 Pierchoski v. Internal Revenue Serv. (In re Piercho-
 
 
 *1034
 

 ski),
 
 220 B.R. 20, 24-25 (Bankr.W.D.Pa.1998);
 
 McGrath v. United States (In re McGrath),
 
 217 B.R. 389, 392 (Bankr.N.D.N.Y.1997).
 
 See also
 
 13 Mertens, The Law of Federal Inoome Tax § 47.50 (1992) (citing
 
 Zellerbach
 
 and listing the same four-part test). Both parties in this case, and the district court below, applied the
 
 Beard
 
 test to define “return,” and we will adopt it as the applicable test.
 

 We next apply the four-part test to this case. First, there is no question that the Forms 1040 submitted by Hindenlang purported to be returns. Hindenlang used the proper form required by IRS regulations and filed the completed forms with the IRS. Second, Hindenlang executed these forms under penalty of perjury. Third, the forms included all the data needed to calculate Hindenlang’s tax liability. Indeed, as indicated above, the forms were simply mirror images of the Substitutes for Returns completed by the IRS. The disputed issue is whether Hindenlang’s Forms 1040, filed after the IRS had made a formal assessment, “represent an honest and reasonable attempt to satisfy the requirements of the tax law.”
 
 Hindenlang,
 
 214 B.R. at 848.
 

 The Bankruptcy Code does permit debtors who have filed late returns to obtain discharges of tax liability in certain situations. Even in this case, the IRS does not challenge the discharge of Hindenlang’s 1989-91 taxes, for which Forms 1040 were also filed first in 1992, because no assessment had been made by the IRS. The district court rejected the government’s contention that once an assessment has been made, this presumption of discharge even in the ease of late-filed returns no longer stands, and the Form 1040 filed post-assessment is not a return as a matter of law. The district court concluded instead that a properly completed Form 1040, even one first filed after an assessment has been made, requires the government, as the party seeking an exception to discharge, to bring forward particularized evidence to show that Hindenlang’s late-filed Forms 1040 did not constitute an honest attempt to comply with the tax law.
 
 See Hindenlang,
 
 214 B.R. at 849. The district court then held that the government failed to meet this particularized evidence burden.
 

 We disagree with the district court’s conclusion that the burden of showing dishonesty under the fourth prong of the
 
 Beard
 
 test shifts to the government if the debtor files a facially valid IRS Form 1040 after IRS assessment. Although we agree that the burden of proving by a preponderance of the evidence an exception to discharge lies with the creditor,
 
 see Grogan v. Garner,
 
 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991);
 
 United States v. Fegeley,
 
 118 F.3d 979, 983 (3d Cir.1997), and that “exceptions to discharge are to be strictly construed in favor of the debtor,”
 
 Fegeley,
 
 118 F.3d at 983, we hold that the government has met its burden in this case. We hold as a matter of law that a Form 1040 is not a return if it no longer serves any tax purpose or has any effect under the Internal Revenue Code. A purported return filed too late to have any effect at all under the Internal Revenue Code cannot constitute “an honest and reasonable attempt to satisfy the requirements of the tax law.” Once the government shows that a Form 1040 submitted after an assessment can serve no purpose under the tax law, the government has met its burden.
 
 [5]
 

 The district court concluded that the government must bring forth particularized evidence to show that the taxpayer did not file the Form 1040 in an honest and good faith attempt to comply with the tax law, even after an assessment has been made.
 
 See Hindenlang,
 
 214 B.R. at 849. We conclude, however, that when the debtor has failed to respond to both the thirty-day and the ninety-day deficiency letters sent by the IRS, and the government has assessed the deficiency, then the Forms 1040 serve no tax
 
 *1035
 
 purpose, and the government thereby has met its burden of showing that the debtor’s actions were not an honest and reasonable effort to satisfy the tax law.
 
 [6]
 

 Hindenlang has not indicated any tax purpose under the Internal Revenue Code for filing his Forms 1040. Although filing a return commences a three-year statute of limitations on the Secretary’s authority to enter an assessment, see 26 U.S.C. § 6501(a), a document purporting to be a return but filed after the assessment has already been made is too late to have any effect on this limitation. Furthermore, the Internal Revenue Code’s ten-year limitation on the IRS’s right to collect on the assessment through levy or judicial proceeding begins at the moment the assessment is made, regardless of whether a return was filed.
 
 See
 
 26 U.S.C. § 6502(a)(1).
 

 Hindenlang’s purported return also would have failed to mitigate or absolve him from civil or criminal liability had the IRS sought to impose such liability. Willful failure to file a timely return is a misdemeanor under 26 U.S.C. § 7203. Late filing of a return or a document purporting to be a return does not remove this criminal liability. Failure to file a return without reasonable cause also subjects a delinquent taxpayer to a five-percent penalty per month up to a maximum of twenty-five percent of the taxes owed.
 
 See
 
 26 U.S.C. § 6651(a)(1). Hindenlang filed his Forms 1040 with the IRS well past any time that would bring him under the twenty-five-percent maximum.
 

 Under Hindenlang’s theory, a person filing a Form 1040 after assessment would be better off in bankruptcy than someone who did not, even though the Form 1040 serves no tax purpose. Nothing in § 523(a)(1) of the Bankruptcy Code suggests that a document that does not qualify as a return under the Internal Revenue Code should nonetheless qualify as a return for purposes of bankruptcy discharge. Such a result would create an unjustifiable inconsistency in the law. We conclude that 11 U.S.C. § 523(a)(1), which refers to tax returns that are required by the Internal Revenue Code to be filed, sought to encompass only those documents that would qualify as returns under the Internal Revenue Code.
 

 We conclude that if a document purporting to be a tax return serves no purpose at all under the Internal Revenue Code, such a document cannot, as a matter of law, qualify as an honest and reasonable attempt to satisfy the requirements of the tax law.
 
 [7]
 
 Therefore the document is not a “return” for purposes of 11 U.S.C. § 523(a)(1)(B).
 

 III. CONCLUSION
 

 For the reasons stated above, we REVERSE the judgment of the district court.
 

 [1]
 

 .Under 26 U.S.C. §§ 6212(a) and 6213(a), the taxpayer has ninety days after the notice of deficiency to petition the Tax Court for a redetermi-nation of the deficiency, during which time the IRS may not assess the deficiency. Afterwards, the taxpayer must pay the tax and then may sue for a refund.
 
 See
 
 26 U.S.C. § 7422(a) and 28 U.S.C. § 1346(a).
 

 [2]
 

 . Hindenlang filed his Forms 1040 as an individual owing taxes as a standard calendar-year taxpayer. Such returns normally must be filed by April 15 following the close of the calendar year.
 
 See
 
 26 U.S.C. §§ 6012 & 6072.
 

 [3]
 

 . Under § 727(a), “[t]he court shall grant the debtor a discharge, unless" the debtor falls within any of the applicable exceptions to discharge provisions of the bankruptcy code.
 

 [4]
 

 . We do not address the issue of the definition of return for purposes of § 523(a)(1)(B) when a taxpayer seeks to discharge state, municipal, or other tax liability.
 

 [5]
 

 . The government suggests a hypothetical situation where a Form 1040 filed after assessment by the IRS could serve a tax law purpose. The government argues that if a taxpayer were to file a Form 1040 after an assessment, the document would constitute a return to the extent that it resulted in a higher tax obligation than the assessment, and presumably that additional amount would be dischargeable. The crux of this theory is that this hypothetical taxpayer made a good faith attempt to comply with the tax law to the extent of the additionally calculated tax. We are not faced with this issue and need not resolve it at this time.
 

 [6]
 

 . Our decision is not inconsistent with the Supreme Court's holding in
 
 Badaracco v. Commissioner,
 
 464 U.S. 386, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984). In
 
 Badaracco,
 
 the Court held that an amended and corrected return filed after a fraudulent return does not trigger the three-year statute of limitations for assessment under 26 U.S.C. § 6501(a).
 
 Id.
 
 at 394, 104 S.Ct. 756. Instead, once a false or fraudulent return has been filed, under § 6501(c)(1) the three-year statute of limitations is irrevocably tolled.
 
 Id.
 
 The Court specifically noted that
 
 Zellerbach
 
 did not render the fraudulent return a nullity. In
 
 Badar-acco,
 
 however, the Supreme Court refused to allow the taxpayers to declare their fraudulent filings null and void and thereby erase an undesirable consequence of their fraudulent acts.
 

 [7]
 

 . We do not conclude that were Hindenlang able to show a tax purpose for filing a Form 1040 after the IRS has made an assessment, he would automatically satisfy the fourth prong of the
 
 Beard
 
 test. The government could still produce particularized evidence showing that such a late filing of a Form 1040 was neither an honest nor reasonable attempt to comply with the tax law. We save resolution of that hypothetical case for another day.