In re Raymond J. CRAWLEY and
Geraldine A. Crawley,
Debtors.

Raymond J. Crawley and Geraldine
A. Crawley, Plaintiffs,

v.

United States of America, Defendant.

Bankruptcy No. 98 B 36478.
Adversary No. 99 A 00161.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Jan. 24, 2000.

Donna B. Wallace, Downers Grove, IL, for plaintiff/debtor.

Craig K. Weaver, United States Department of Justice, Washington, DC, for defendant.

Joel R. Nathan, Assistant United States Attorney, Chicago, IL.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the complaint filed by the Debtors, Raymond J. Crawley and Geraldine A. Crawley (collectively the "Crawleys") against the United States of America (the "USA") to determine whether their income tax liabilities for tax years 1985 through 1994 should be discharged pursuant to 11 U.S.C. § 523(a)(1). For the reasons set forth herein, the Court finds the debt is non-dischargeable under 11 U.S.C. § 523(a)(1)(C) because the Crawleys engaged in proscribed tax evasion, but is dischargeable under 11 U.S.C. § 523(a)(1)(B)(i) and (ii).

### I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a), formerly known as General Rule 2.33(A), of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

### II. FACTS AND BACKGROUND

Many of the facts are undisputed. Mrs. Crawley is a high school graduate with no formal accounting training. Mr. Crawley has a tenth grade education with no formal accounting training. In 1977, the Crawleys started a business known as Multi–Ornamental Service Company ("Multi–Ornamental"). She did the office work and he did the supervision of work in the field for the ornamental iron working business. Multi–Ornamental was initially a sole proprietorship involved with rolling doors and grill work. It later became a subchapter S corporation for income tax purposes, solely owned and controlled by the Crawleys. Under 26 U.S.C. § 1366, income received by a subchapter S corporation is taxed to each shareholder pro rata. In 1993, Mul-

ti–Ornamental ceased to operate, but Mr. Crawley continued to provide service to customers as a sole proprietor.

When the Crawleys began their business in 1977, they employed the services of an accountant, Dennis Cipcich ("Cipcich"). Cipcich trained Mrs. Crawley to perform the bookkeeping functions for Multi–Ornamental. Cipcich prepared the payroll tax papers and other accounting statements for the business, including income tax returns. Cipcich also prepared the Crawleys' individual income tax returns.

The Crawleys filed tax returns for Multi–Ornamental for the taxable years 1977 through 1984. In 1985, Multi–Ornamental experienced financial difficulties. Cipcich negotiated an installment arrangement with the Internal Revenue Service (the "IRS") for the payment of delinquent withholding and payroll taxes. From 1985 through 1994, Mrs. Crawley forwarded business records to Cipcich, remitted all correspondence from taxing authorities to him and had conversations with Cipcich concerning the preparation and filing of income tax returns. See Crawleys' Exhibit Nos. 1–5.

The Crawleys were unable to pay their 1985 income taxes in full. The testimony was conflicting regarding Cipcich's advice to the Crawleys in 1985 and subsequent years regarding the filing of the returns. Mrs. Crawley testified that Cipcich advised her not to file tax returns if she and her husband could not pay the taxes in full. Cipcich, on the other hand, testified that he never advised the Crawleys not to file tax returns. Further, he did not recall specifically being requested to timely prepare the returns before he did so in 1996.

The Crawleys filed their individual income tax returns for the taxable years 1977 through 1984. The Crawleys did not timely file their individual income tax returns for taxable years 1985 through 1994, nor pay any taxes. The Crawleys did not timely file the income tax returns for Multi–Ornamental for taxable years 1985 through 1992, nor pay any taxes.

Mrs. Crawley testified she had no knowledge of proper tax procedures, but was aware of the annual April 15th deadline for filing income tax returns and the obligation to pay income taxes. Mr. Crawley was aware that the subject returns were not timely filed when due and the taxes in question were not paid. Lack of money triggered the decision not to timely file returns for the decade in question.

On January 18, 1996, the Crawleys sold their home and desired to purchase a new home. See Crawleys' Exhibit No. 6. Mrs. Crawley testified that they were unable to finance the purchase of a new home without submitting income tax returns from previous years. It was at this point that the Crawleys met with Richard M. Randick ("Randick"), an attorney who handles tax matters. Randick, Cipcich and the Crawleys were present at this meeting. Randick advised the Crawleys of the seriousness of their delinquent tax situation. Randick initiated contact with the IRS concerning the unfiled tax returns. In 1996, the Crawleys made a proposal for an "offer in compromise" to the IRS. The offer was refused because the IRS thought that the Crawleys were capable of paying more than their offer of $1,500.00. See Crawleys' Exhibit No. 7.

Cipcich subsequently prepared the delinquent personal tax returns for the Crawleys for the years at issue, as well as the corporate tax returns for Multi–Ornamental. The Crawleys' individual income tax returns for taxable years 1985 through 1990 were signed under oath by the Crawleys on June 26, 1996. See USA's Exhibit Nos. 1–6. Those returns were subsequently filed with the IRS in July. The Crawleys' individual income tax returns for taxable years 1991 through 1994 were signed under oath by the Crawleys on September 18, 1996. See USA's Exhibit Nos. 7–10. The returns were then filed with the IRS later that month. The income tax returns for Multi–Ornamental for taxable years 1985 through 1990 were signed under oath by Mr. Crawley on June 26, 1996 and subsequently filed with the

IRS in July. *See* USA's Exhibit Nos. 11–16. The income tax returns for Multi–Ornamental for taxable years 1991 and 1992 were signed under oath by Mr. Crawley on September 18, 1996 and subsequently filed with the IRS later that month. *See* USA's Exhibit Nos. 17–18.

Cipcich testified that the returns were prepared based on the information that was available to him. Cipcich further testified that he placed his disclaimers at the end of each return, something he typically did not do, because he did not have all of the information necessary to completely and accurately prepare the returns. Cipcich admittedly did not review the returns with the Crawleys. Mrs. Crawley testified that hours after she and Mr. Crawley signed the returns, they noticed errors in the income reported, which they claim was excessive, and subsequently advised Cipcich. However, the Crawleys have not filed amended tax returns.

The Crawleys filed a Chapter 7 petition on November 12, 1998. Among the creditors listed on the Schedules was the USA, through its agency, the IRS. The USA asserts that the Crawleys owe income taxes, including penalties and interest, for years 1985 through 1994 in the amount of $294,549.00. The Crawleys filed the instant adversary proceeding on February 16, 1999. They seek a determination that the debt owed to the USA is dischargeable under 11 U.S.C. § 523(a)(1)(B)(ii). The USA contends that the debt is non-dischargeable because the Crawleys have willfully attempted to evade or defeat their taxes pursuant to 11 U.S.C. § 523(a)(1)(C). Alternatively, the USA argues that the 1040 Forms filed by the Crawleys for the tax years 1985 through 1994 did not fulfill the legal requirements of income tax returns and therefore the debt is also non-dischargeable under § 523(a)(1)(B)(i).

### III. DISCUSSION

#### A. The Standards for Dischargeability in the Seventh Circuit

The party seeking to establish an exception to the discharge of a debt bears the burden of proof. *Selfreliance Fed. Credit Union v. Harasymiw (In re Harasymiw)*, 895 F.2d 1170, 1172 (7th Cir.1990); *Banner Oil Co. v. Bryson (In re Bryson)*, 187 B.R. 939, 961 (Bankr.N.D.Ill.1995). The United States Supreme Court has held that the burden of proof required to establish an exception to discharge is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re McFarland*, 84 F.3d 943, 946 (7th Cir.), *cert. denied*, 519 U.S. 931, 117 S.Ct. 302, 136 L.Ed.2d 220 (1996); *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir.1994). To further the policy of providing a debtor a fresh start in bankruptcy, "exceptions to discharge are to be construed strictly against a creditor and liberally in favor of a debtor." *Goldberg Secs., Inc. v. Scarlata (In re Scarlata)*, 979 F.2d 521, 524 (7th Cir.1992) (quoting *In re Zarzynski*, 771 F.2d 304, 306 (7th Cir. 1985)). *Accord In re Reines*, 142 F.3d 970, 972–73 (7th Cir.1998), *cert. denied*, 525 U.S. 1068, 119 S.Ct. 797, 142 L.Ed.2d 659 (1999).

The burden of proving that the Crawleys' tax liabilities are non-dischargeable is on the USA. *Sommers v. IRS (In re Sommers)*, 209 B.R. 471, 477–78 (Bankr. N.D.Ill.1997) (citations omitted); *Dube v. United States (In re Dube)*, 169 B.R. 886, 891 n. 5 (Bankr.N.D.Ill.1994) (citations omitted), *aff'd*, 1995 WL 238674 (N.D.Ill. April 20, 1995); *Sonnenberg v. United States (In re Sonnenberg)*, 148 B.R. 35, 37 (Bankr.N.D.Ill.1992); *Berzon v. United States (In re Berzon)*, 145 B.R. 247, 250 (Bankr.N.D.Ill.1992) (citations omitted).

#### B. Whether the Tax Forms Filed By the Crawleys Constitute Returns Under 11 U.S.C. § 523(a)(1)(B)(i)

First, the Court will address the argument of the USA that the 1040 Forms filed by the Crawleys for tax years 1985 through 1994 did not fulfill the legal requirements of income tax returns and

therefore the debt is non-dischargeable under § 523(a)(1)(B)(i). The USA contends that the 1040 Forms submitted to the IRS by the Crawleys for the years in question are not returns within the meaning of § 523(a)(1)(B)(i) because they claim their income is overstated. The USA cites *In re Hindenlang*, 164 F.3d 1029 (6th Cir.), *cert. denied*, —— U.S. ——, 120 S.Ct. 41, 145 L.Ed.2d 37 (1999) in support of this proposition. The USA concludes that no qualifying returns were filed by the Crawleys and that therefore the inquiry should end at § 523(a)(1)(B)(i). The Court disagrees under the undisputed facts.

Section 523 of the Bankruptcy Code enumerates specific, limited exceptions to the dischargeability of debts. Section 523(a)(1)(B) provides:

(a) A discharge under section 727 ... does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

(B) with respect to which a return, if required—

(i) was not filed; or

(ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition....

11 U.S.C. § 523(a)(1)(B). The purported tax returns filed by the Crawleys were filed over two years pre-petition, and thus are outside the two-year pre-petition period provided in § 523(a)(1)(B)(ii). Consequently, the debt is dischargeable under that part of the statute. The taxes involved are the Crawleys' individual income taxes and the income taxes generated by Multi-Ornamental for the subject tax years, for which returns were required, so the focus therefore shifts to § 523(a)(1)(B)(i).

The Seventh Circuit has not addressed the issue at bar. There are two lines of cases with conflicting results. *Compare In re Hindenlang*, 164 F.3d 1029 (6th Cir. 1999) *with In re Nunez*, 232 B.R. 778 (9th Cir. BAP 1999). Thus, the Court must choose which of the two lines of authority to follow, absent a binding Seventh Circuit precedent.

■ The USA urges the Court to follow the reasoning of the *Hindenlang* case and find that when returns are filed after the IRS has assessed the tax, such documents do not further the Internal Revenue Code tax purpose of self-assessment, because they come at a time after the IRS has compiled information and computed the tax liability of the taxpayer. The Court concludes that this view ignores the plain language of the bankruptcy statute which makes no such express requirement that only taxes for which tax returns filed by debtor taxpayers before a taxing authority makes its own assessment are eligible for discharge (or in the context of non-dischargeable debts under § 523(a), those tax debts for which debtor taxpayers filed returns after the taxing authority made its assessment are excepted from discharge).

The Court notes that there was no evidence adduced at trial regarding whether the IRS made an assessment of any of the unpaid delinquent taxes due and owing by the Crawleys and Multi-Ornamental to the IRS. The parties stipulated that the IRS sent the Crawleys notices regarding the overdue tax liabilities, however, those documents were not introduced into evidence.

*Hindenlang* involved an apparently recalcitrant and uncooperative taxpayer who did not consent to the IRS's proposed liability under deficiency letters, and who refused to respond to or execute substitute returns, which the IRS prepared and sent. 164 F.3d at 1031. The court looked to the Internal Revenue Code and case law decided thereunder to determine the proper definition of "return" because the term is undefined for purposes of the Bankruptcy Code. *Id.* at 1032-34. The Sixth Circuit held, as a matter of law, that a purported return filed too late to have any effect at all under the Internal Revenue Code cannot constitute "an honest and reasonable attempt to satisfy the requirements of the

tax law." *Id.* at 1034. The court found that the late filing of the 1040 Forms had no effect on the three-year statute of limitations on the statutory assessment period under 26 U.S.C. § 6501(a); the ten-year statute of limitations on the collection rights of the IRS via levy or judicial proceeding under 26 U.S.C. § 6502(a)(1); on any civil or criminal liability under 26 U.S.C. § 7203; or on the penalties under 26 U.S.C. § 6651(a)(1). Thus, the law and results outside of bankruptcy appear to drive the Sixth Circuit's approach.

The Bankruptcy Code does not define what constitutes a return for purposes of § 523(a)(1)(B)(i). Indeed, "return" is not one of the terms defined in 11 U.S.C. § 101. When interpreting a statute, the Court must first look to the statutory language. The express language of § 523(a)(1)(B)(i) does not distinguish between returns filed pre-assessment and those filed post-assessment. Congress easily could have conditioned discharge of tax debt on whether a return was filed prior to an assessment, as noted in *Nunez*, 232 B.R. at 781. Congress utilized assessment as a trigger for other time periods in the Bankruptcy Code. *See* 11 U.S.C. § 507(a)(8)(A)(ii) and (iii) (priority qualifications for certain allowed unsecured claims of governmental units). The Court disagrees with the unstated premise in *Hindenlang* that the case law, results and analysis under the Internal Revenue Code should, ipso facto, mandate the bankruptcy results for all debtor taxpayers who seek to fit within the limited protection of § 523(a)(1).

"[I]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another." *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) (quotation omitted). Congress specifically omitted any reference to assessment in § 523(a)(1)(B)(i) or (ii). The Court thus assumes that was intentional on the part of Congress. *See, e.g., Pioneer*

*Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 388, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). As one court noted, the reading of the statute urged by the USA would lead to an absurd result. *See In re Savage*, 218 B.R. 126, 132 (10th Cir. BAP 1998). "Effectively, a debtor, for whom the IRS prepares substitute returns, could never discharge taxes. We find nothing in the Bankruptcy Code that would lead us to adopt the IRS's argument." *Id.*

In short, the Court finds that the rational espoused in the *Nunez* and *Savage* decisions is preferable to the premise upon which *Hindenlang* is based. This Court will not read into § 523(a)(1)(B)(i) the requirement that a debtor must have filed a return prior to an assessment by the IRS. *Nunez*, 232 B.R. at 782. To follow the USA's argument would undercut one of the principal policy considerations of the Bankruptcy Code to interpret exceptions to discharge narrowly and to provide the honest debtor with a fresh start. The argument of the USA requires a strained interpretation and application of the statutory language of § 523(a)(1)(B)(i), which does not expressly base the discharge of taxes on whether a return was filed prior to assessment. *See Savage*, 218 B.R. at 132.

Next, the Court will address the related issue for purposes of § 523(a)(1)(B)(i) of whether the Crawleys' late-filed returns constitute an honest and reasonable attempt to satisfy the requirements of filing tax returns. Courts look to four factors when determining whether a particular document qualifies as a tax return. The document must (1) purport to be a return, (2) be executed under penalty of perjury, (3) contain sufficient data to allow calculation of tax, and (4) represent an honest and reasonable attempt to satisfy the requirements of the tax law. *Germantown Trust Co. v. Commissioner*, 309 U.S. 304, 60 S.Ct. 566, 84 L.Ed. 770 (1940);

*In re Hatton,* 216 B.R. 278, 282 (9th Cir. BAP 1997).

There is no real dispute on the first three requirements. Copies of the subject documents have been furnished to the Court and are completed Individual Form 1040 tax returns for the Crawleys and Form 1120S tax returns for Multi–Ornamental, a subchapter S corporation, for all the years in question. They were purportedly signed under penalty of perjury by Mr. and Mrs. Crawley, and they contain sufficient data to allow calculation of the taxes. It is undisputed that Cipcich prepared these returns to the best of his ability given the information and documentation he had. The *Hindenlang* case noted:

> We conclude that if a document purporting to be a tax return serves no purpose at all under the Internal Revenue Code, such a document cannot, as a matter of law, qualify as an honest and reasonable attempt to satisfy the requirements of the tax law. Therefore the document is not a "return" for purposes of 11 U.S.C. § 523(a)(1)(B).

164 F.3d at 1035 (footnote omitted).

■■■ The USA urges this Court to adopt the rationale of the *Hindenlang* court and find that the Crawleys' late-filed returns are not qualifying returns under § 523(a)(1)(B) because as the Crawleys have testified, their income is overstated, and thus, is not an honest and reasonable attempt to reflect their income. The Court declines to follow the reasoning of *Hindenlang* and finds that the rationale applied in *Nunez* is more logical and compelling. The good faith inquiry under § 523(a)(1)(B) should focus on a debtor's intent at the time the returns are filed. *Nunez,* 232 B.R. at 783. This Court agrees.

In 1996, the Crawleys, through their attorney, Randick, had Cipcich prepare the tax returns for the years in question. Cipcich testified, without any rebuttal, that he prepared the returns based upon the information that was available to him at the time. The returns are facially complete and in proper form. The Court, however, makes no findings with respect to the accuracy of the information or computations contained therein. That the Crawleys had these returns prepared in order to finance the purchase of a new home does not, ipso facto, make the returns a dishonest and unreasonable attempt to satisfy the law requiring the filing of tax returns. Moreover, the USA makes no argument of any fraud or misrepresentation by the Crawleys in connection with the contents of the late-filed returns. No evidence of fraud or misrepresentation was introduced at trial. Indeed, their efforts to effect an offer in compromise are evidence of an attempt (albeit unsuccessful) to pay what they thought they could afford, rather than an indication of fraud. Hence, the USA has failed to demonstrate that the Crawleys lacked good faith or possessed a fraudulent intent when the tax returns were filed. Therefore, the Court finds that the filing of the returns by the Crawleys was a belated, honest attempt on their part to comply with the tax law filing requirement.

For these reasons, the Court rejects the USA's argument and finds that the Crawleys' 1040 and 1120S Forms constitute income tax returns for purposes of § 523(a)(1)(B)(i). Hence, the debt is dischargeable under § 523(a)(1)(B)(i).

### C. Whether the Crawleys Willfully Attempted to Evade or Defeat the Payment of Taxes Pursuant to 11 U.S.C. § 523(a)(1)(C)

Though the Court finds that the late-filed returns are sufficient for purposes of § 523(a)(1)(B), and were not fraudulently prepared or filed, that determination does not end the inquiry or dispose of the main contention of the IRS that the Crawleys have improperly attempted to evade or defeat the subject income taxes. The Crawleys argue that there was no willful attempt to evade or defeat the payment of taxes. Rather, they contend that their

accountant, Cipcich, advised them not to file the tax returns. They argue that they are unsophisticated and that they relied on their accountant and his alleged reassurances that they should not file tax returns if they could not pay the taxes due and owing.

Section 523(a)(1)(C) provides in relevant part:

A discharge under section 727 ... does not discharge an individual debtor from any debt—

(1) for a tax ...

(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.

11 U.S.C. § 523(a)(1)(C). Section 523(a)(1)(C) should be applied in such a manner as to "best promote § 523's purpose of limiting discharge to the honest but unfortunate debtor." *In re Birkenstock*, 87 F.3d 947, 951 (7th Cir.1996) (citation omitted). The USA does not argue that the Crawleys filed fraudulent returns. Rather, it contends that they willfully attempted to evade or defeat the tax owed.

Pursuant to § 523(a)(1)(C), whether the Crawleys willfully attempted to evade income tax is a question of fact to be determined from the totality of the record. *Sommers*, 209 B.R. at 478 (citing *Berzon*, 145 B.R. at 250). The Seventh Circuit has found that the willful evasion portion of § 523(a)(1)(C) contains both a conduct requirement and a mental state requirement. *Birkenstock*, 87 F.3d at 951 (conduct requirement goes to the manner in which the debtor sought to evade or defeat his tax liability and the mental state requirement goes to whether the debtor did so willfully).

With respect to the conduct requirement, the Seventh Circuit acknowledged the Eleventh Circuit's holding in *In re Haas*, 48 F.3d 1153 (11th Cir.1995) that nonpayment of taxes alone, does not constitute willful evasion under § 523(a)(1)(C). *Birkenstock*, 87 F.3d at 951. Courts, how-

ever, can consider the act of nonpayment in the review of the underlying circumstances to arrive at a finding of willful evasion. *Id.* (citation omitted).

With respect to the mental state requirement, the Seventh Circuit concurs with the test set forth by the Sixth Circuit in *In re Toti*, 24 F.3d 806 (6th Cir.), *cert. denied*, 513 U.S. 987, 115 S.Ct. 482, 130 L.Ed.2d 395 (1994). Willful evasion requires a "voluntary, conscious, and intentional" attempt to avoid tax liability. *Id.* at 808. Hence, a willful attempt to evade or defeat taxes requires that (1) the debtor knows he has a duty to pay the tax and (2) that he voluntarily and intentionally attempted to violate that duty. *Birkenstock*, 87 F.3d at 952. "This willfulness requirement prevents the application of the exception to debtors who make inadvertent mistakes, reserving nondischargeability for those whose efforts to evade tax liability are knowing and deliberate." *Id.*

Direct proof of intent to evade taxes can be proven by circumstantial evidence and reasonable inferences drawn from certain fact patterns indicative of "badges of fraud." *Berzon*, 145 B.R. at 250 (citation omitted). Same include significant understatements of income made repeatedly; failure to file tax returns; repeatedly filing returns late; implausible or inconsistent behavior by the taxpayer; and failure to cooperate with federal tax authorities. *Id.* (citations omitted).

The Court finds that the USA has demonstrated by a preponderance of the evidence that the Crawleys willfully attempted to evade paying their taxes for each of the tax years in question. The Crawleys filed their individual income tax returns and the income tax returns for their subchapter S corporation, Multi–Ornamental, and paid their tax liabilities for the taxable years 1977 through 1984. This established a pattern of knowing compliance with their duties to file and pay. The Crawleys do not dispute that they knew

they had a duty to file tax returns. Moreover, they voluntarily and intentionally violated both duties because they were short of sufficient cash beginning in 1985. Thus, both elements required by *Birkenstock* are present and satisfied by the evidence.

The excuse the Crawleys provide for not filing tax returns for ten years is that they relied on their accountant, Cipcich, who disputes that he told them that they should not file tax returns if they were unable to pay the tax liabilities. The Crawleys did not cite any case law is support of their position. In *Thorngren v. United States (In re Thorngren)*, 227 B.R. 139 (Bankr. N.D.Ill.1998), Judge Schwartz rejected a similar argument. There, the court held that although the taxpayers' accountant may have told them that they probably did not owe any taxes for the years in question, they still had a duty to file tax returns. *Id.* at 143. The Court agrees and finds that even if the Crawleys relied on a belief that Cipcich advised them not to file tax returns, they had a known duty to file the tax returns and pay the taxes due because they had satisfied those duties for the period from tax year 1977 through 1984. In short, the Court rejects the Crawleys' defense that they properly relied on the advice of their accountant. The Court has rejected a similar defense raised by debtors in relying on the purported advice of counsel. *See A.V. Reilly, Int'l, Ltd. v. Rosenzweig (In re Rosenzweig)*, 237 B.R. 453, 457–58 (Bankr.N.D.Ill.1999); *Netherton v. Baker (In re Baker)*, 205 B.R. 125, 132–33 (Bankr.N.D.Ill.1997). The Court rejects this insufficient defense as a matter of law regardless of what kind of professional person allegedly provides the bad advice. This defense undermines the basic principle that the law should generally be adhered to despite any bad advice not to comply with it.

In addition, the Crawleys argue that after Cipcich prepared the tax returns for the years in question, they did not read and review the information contained therein before signing the returns. Ac-cording to Mrs. Crawley, they were given the "bum's rush" by Cipcich. The Court also rejects this argument as a basis for the Crawleys to defeat their willful failure to pay the tax liabilities. The Seventh Circuit has unequivocally stated:

> [P]eople who sign tax returns omitting income or overstating deductions often blame their accountant or tax preparer. But these arguments never go anywhere. People are free to sign legal documents without reading them, but the documents are binding whether read or not.

*Novitsky v. American Consulting Eng'rs, L.L.C.*, 196 F.3d 699, 702 (7th Cir.1999) (citation omitted).

As the evidence undisputedly showed, the Crawleys had filed tax returns (and paid taxes) for many years prior to the years in issue. The Court finds, based on the totality of the circumstances, that the Crawleys' failure to pay any federal income taxes, coupled with a correlative ten-year pattern of failing to file tax returns, constitutes an inexcusable attempt to "evade or defeat" their tax liabilities. Their desire not to raise a red flag by filing late because of nonpayment continued for a protracted period, which ended only because they desired to finance the acquisition of a new home, and prudent lenders asked for copies of recently filed tax returns as part of their due diligence and before lending.

The Court also notes that the Crawleys appear to have waited more than the two-year period prescribed by § 523(a)(1)(B)(ii) before filing for relief with this Court. Thus, they and their present counsel are not so unaware of the tax law benefits available under the Bankruptcy Code that an earlier filed bankruptcy petition might not obtain.

Hence, the Court concludes that the Crawleys voluntarily, intentionally and wrongfully sought to "evade or defeat" their tax liabilities and did so willfully. Consequently, the Court finds the debt

owed by the Crawleys to the USA is non-dischargeable under § 523(a)(1)(C).

### IV. CONCLUSION

For the foregoing reasons, the Court finds the debt owed by the Crawleys to the USA for tax years 1985 through 1994 is non-dischargeable under § 523(a)(1)(C), but is dischargeable under § 523(a)(1)(B)(i) and (ii).

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.