**In re Max RALPH and Donna Ralph, Debtors.**

**Max Ralph and Donna Ralph, Plaintiffs,**

**v.**

**The United States of America, Defendant.**

**Bankruptcy No. 99–4933–8G7.**
**Adversary No. 99–292.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Aug. 17, 2000.

Steven M. Fishman, Safety Harbor, FL, for Debtors/Plaintiffs.

Carol Koehler, and Philip Doyle, Tax Division, U.S. Department of Justice, Washington, D.C., for Defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND MEMORANDUM OPINION

PAUL M. GLENN, Bankruptcy Judge.

**THIS CASE** came before the Court for a final evidentiary hearing in the above-captioned adversary proceeding.

The Debtors, Max Ralph and Donna Ralph, commenced this proceeding by filing a Complaint Initiating Adversary Proceeding to Declare Taxes Dischargeable. The Debtors alleged that Donna Ralph's income tax obligations for the 1987, 1988, 1989, 1990, and 1991 tax years are dischargeable in their chapter 7 case. The Debtors also alleged that their joint income tax obligations for the 1992, 1993, and 1994 tax years are dischargeable.

The United States of America agrees that Donna Ralph's income taxes for 1990 and 1991 are dischargeable, and also agrees that the Debtors' joint income taxes for 1992, 1993, and 1994 are dischargeable. The only issue remaining for consideration, therefore, is whether Donna Ralph's income tax obligations for 1987, 1988, and 1989 are dischargeable. The United States contends that the taxes are excepted from discharge pursuant to § 523(a)(1)(B)(i) of the Bankruptcy Code because Donna Ralph did not file returns for those years.

### Background

Donna Ralph did not file timely income tax returns for the 1987, 1988, and 1989 tax years.

On May 17, 1991, the Internal Revenue Service sent Donna Ralph two letters referred to as "thirty-day letters." (Transcript of Final Evidentiary Hearing, p. 9). Generally, thirty-day letters inform a taxpayer who has not filed a return that the IRS has computed his proposed tax liability and penalties, and that the taxpayer must file a Form 1040 or otherwise respond within thirty days of the date of the letter or the IRS will assess the taxes and penalties. The two "thirty-day letters" sent to Donna Ralph on May 17, 1991, related to the 1987 and 1988 tax years. (United States' Exhibits 3 and 7).

On July 10, 1991, the IRS sent Donna Ralph two "notices of deficiency." (Transcript, p. 11). Generally, notices of deficiency inform a taxpayer that a deficiency in his income taxes has been calculated, and that the taxpayer must request a redetermination of the deficiency within ninety days of the date of the notice or the tax will be assessed. The two notices of deficiency sent to Donna Ralph on July 10,

1991, related to the 1987 and 1988 tax years. (United States' Exhibits 4 and 6).

On November 1, 1991, the IRS sent Donna Ralph a "thirty-day letter" relating to the 1989 tax year. (United States' Exhibit 9).

On December 11, 1991, the IRS sent Donna Ralph a notice of deficiency relating to the 1989 tax year. (United States' Exhibit 10).

Donna Ralph did not respond to any of the letters or notices described above within the time permitted.

In 1991 and 1992, the IRS assessed Donna Ralph's income taxes and penalties for 1987, 1988, and 1989. (United States' Exhibits 1 and 2, Certificates of Assessments and Payments).

In early 1995, Donna Ralph learned of a program initiated by the IRS to encourage non-filing individuals to file their tax returns. Donna Ralph understood that the program involved a grant of leniency to those non-filers who came forward at that time and filed delinquent returns. (United States' Exhibit 13, Deposition transcript of Donna Ralph, p. 12).

On February 6, 1995, Donna Ralph signed Form 1040EZ income tax returns for 1987, 1988, and 1989, that had been prepared for her by an accountant. (United States Exhibits 5, 8, and 11). According to Donna Ralph, she hand-delivered the returns to the IRS office in Fort Lauderdale, Florida. (United States Exhibit 13, Deposition Transcript, p. 5). The adjusted gross income and taxable income reflected on the returns is essentially the same as that used by the IRS in 1991 and 1992 to assess Donna Ralph's taxes.

On March 30, 1999, over four years after filing the returns for 1987, 1988, and 1990, the Debtors filed their voluntary petition under chapter 7 of the Bankruptcy Code.

### Discussion

Section 523(a)(1)(B)(i) of the Bankruptcy Code provides:

**11 U.S.C. § 523. Exceptions to discharge**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(1) for a tax or customs duty—

. . .

■ (B) with respect to which a return, if required—

(i) was not filed.

"The policy behind this subsection is that a debtor should not be permitted to discharge a tax liability based upon a required tax return that was never filed." *In re Jackson*, 184 F.3d 1046, 1052 (9th Cir.1999)(quoting 3 Norton Bankruptcy Law and Practice 2d § 47:6, 47–15 (1997)).

The United States contends that the "Forms 1040EZ submitted by the debtor four years before the filing of this petition in bankruptcy are of no legal effect in light of the prior tax assessments, and are not federal income tax returns for dischargeability purposes." (Post–Trial Brief by United States of America, p. 3). To support its contention, the United States relies primarily on the decision of the Sixth Circuit Court of Appeals in *In re Hindenlang*, 164 F.3d 1029 (6th Cir.1999).

In *Hindenlang*, the debtor had not filed tax returns, and the IRS sent the debtor a thirty-day letter, prepared a substitute for return, sent him a notice of deficiency, and assessed the taxes. Two years after the assessment, the debtor sent the IRS a Form 1040 income tax return. After two years following the filing of the Form 1040, the debtor filed a chapter 7 case. *In re Hindenlang*, 164 F.3d at 1031. The government asserted that once a taxpayer has been assessed a deficiency, a Form 1040 submitted by the taxpayer no longer qualifies as a return under § 523(a)(1)(B). According to the Sixth Circuit, therefore, the issue in the case was the meaning of the word "return" in § 523(a)(1) of the Bankruptcy Code. *Id.* at 1032.

The Sixth Circuit applied a four-part test to determine whether a document submitted to the IRS constitutes a "return."

In order for a document to qualify as a return: "(1) it must purport to be a return; (2) it must be executed under penalty of perjury; (3) it must contain sufficient data to allow calculation of tax; and (4) it must represent an honest and reasonable attempt to satisfy the requirements of the tax law."

*Id.* at 1033(quoting *In re Hindenlang,* 214 B.R. at 848). The test stems from the United States Supreme Court decision in *Germantown Trust Co. v. Commissioner,* 309 U.S. 304, 60 S.Ct. 566, 84 L.Ed. 770 (1940).

The first three components of the test were not at issue in *Hindenlang.* Instead, the real dispute involved whether the debtor's Form 1040s, filed after the IRS had assessed the taxes, represented an honest and reasonable attempt to satisfy the requirements of the tax law, as prescribed by the fourth component of the test. The Sixth Circuit concluded that the Form 1040 was not a "return" for purposes of 11 U.S.C. § 523(a)(1)(B).

We hold as a matter of law that a Form 1040 is not a return if it no longer serves any tax purpose or has any effect under the Internal Revenue Code. A purported return filed too late to have any effect at all under the Internal Revenue Code cannot constitute "an honest and reasonable attempt to satisfy the requirements of the tax law." Once the government shows that a Form 1040 submitted after an assessment can serve no purpose under the tax law, the government has met its burden.

*In re Hindenlang,* 164 F.3d at 1034. In that case, no tax purpose was shown for filing the Form 1040, and the debt was excepted from discharge pursuant to § 523(a)(1)(B)(i) of the Bankruptcy Code.

More than a year after *Hindenlang* was decided, however, the Bankruptcy Court in *In re Crawley,* 244 B.R. 121, 126 (Bankr. N.D.Ill.2000) recognized that two separate lines of cases have developed concerning the issue of whether a Form 1040 constitutes a "return" for purposes of § 523(a)(1)(B)(i) if it was submitted by a debtor following assessment of the tax.

There are two lines of cases with conflicting results. *Compare In re Hindenlang,* 164 F.3d 1029 (6th Cir.1999) *with In re Nunez,* 232 B.R. 778 (9th Cir. BAP 1999).

*In re Crawley,* 244 B.R. at 126(Emphasis supplied). The decision in *Nunez* was reached sixteen days prior to the decision in *Hindenlang.* This split of authority also was recognized in *In re Wright,* 244 B.R. 451, 456 n. 4 (Bankr.N.D.Cal.2000).

In *In re Nunez,* 232 B.R. 778, 779–80 (9th Cir. BAP 1999), the debtor had failed to file tax returns for three years, and the IRS prepared substitute returns. The IRS assessed the taxes, and the debtor subsequently submitted Form 1040s for the three years in question. The debtor filed a chapter 7 case, and commenced an adversary proceeding seeking a determination that the taxes were dischargeable. *In re Nunez,* 232 B.R. at 780. In connection with the adversary proceeding, the debtor furnished a declaration that he had filed the returns in response to an amnesty program offered by the IRS, and that he had consulted both an attorney and an accountant to prepare the tax forms. *Id.*

The IRS contended that Form 1040s do not qualify as returns if they were filed after the IRS had made an assessment on its own, because they did not provide the IRS with the information necessary to compute the tax. Additionally, the IRS contended that the Forms did not constitute an honest and reasonable attempt by the debtor to satisfy the tax laws. *Id.* at 781.

The Ninth Circuit Bankruptcy Appellate Panel first determined that the language of § 523(a)(1)(B) does not require a debtor to file a return prior to assessment by the IRS for the tax liability to be dischargeable. The Panel agreed with other Courts

that Congress used assessment as a trigger for other time periods in the Bankruptcy Code, such as in § 507(a)(8)(A)(ii) concerning priorities, but that it did not condition the discharge of a tax debt in § 523(a)(1) on whether a return was filed prior to assessment. "When Congress includes particular language in one section of the Code, but omits it in another, it is presumed to have acted intentionally and purposely." *Id.* at 782.

The Panel next considered the requirement that a debtor act in good faith in submitting a Form 1040. The requirement stems from the four-pronged test set forth by the Supreme Court in *Germantown Trust Co.*, *supra*, which includes the requirement that "an honest and reasonable attempt must be made to satisfy the requirements of the tax laws." The Ninth Circuit Bankruptcy Appellate Panel determined that the good faith inquiry should focus on the debtor's intent at the time that the returns are filed. *In re Nunez*, 232 B.R. at 783. In *Nunez*, the debtor had responded to an amnesty program sponsored by the IRS and had sought the assistance of an attorney and an accountant. Three years elapsed between the filing of the returns and the filing of the chapter 7 case. The IRS did not present any evidence showing that the debtor acted in bad faith. Consequently, the Panel concluded:

> Section 523(a)(1)(B) excepts from discharge tax debts where a return has not been filed. The IRS argues for an absolute rule that where it prepares substitute returns and assesses the taxes due, any document subsequently filed by the debtor cannot be deemed a return. The Panel rejects that rule as contrary to the strict language of the statute.

The IRS also argues that the Forms were not prepared in good faith. We question the applicability of that requirement to these facts. In any case, we agree with the bankruptcy court that the IRS failed to provide any evidence suggesting that there is a genuine dispute as to a material fact on this issue. *Id.* at 784. The Panel affirmed the Bankruptcy Court's decision in favor of the debtor.

A year later, the Bankruptcy Court in *Crawley*, *supra*, determined that it should follow the reasoning of *Nunez*, rather than the reasoning of *Hindenlang*. In *Crawley*, the debtors were a married couple with no education beyond high school. *In re Crawley*, 244 B.R. at 123. They did not file tax returns for nine years because they did not have the money to pay any taxes that might be owed. After they were unable to finance the purchase of a new home, however, the debtors signed and filed returns with the IRS. Approximately two and one-half years later they filed a chapter 7 case. The IRS asserted that the returns were filed after it had assessed the taxes, and that the tax liability therefore should be excepted from discharge under § 523(a)(1)(B)(i).

The Bankruptcy Court noted that "§ 523(a)(1)(B)(i) does not distinguish between returns filed pre-assessment and those filed post-assessment." *Id.* at 127. Applying the same rationale that the Ninth Circuit Bankruptcy Appellate Panel used in *Nunez*, the Court concluded that Congress specifically and purposefully omitted any reference to assessment in § 523(a)(1)(B)(i), as shown by the fact that assessment is used as a trigger date in other sections of the Bankruptcy Code, but not in § 523(a)(1)(B). The Form 1040s filed by the debtors, therefore, were "returns" for dischargeability purposes, since the debtors were not required to file the returns prior to assessment by the IRS.

The Bankruptcy Court then determined that the debtors' late-filed returns were honest and reasonable attempts to satisfy the requirements of the tax law. Again, the Bankruptcy Court agreed with the Ninth Circuit Bankruptcy Appellate Panel in *Nunez* that the good faith inquiry under § 523(a)(1)(B) should focus on a debtor's intent at the time that the returns are

filed. *Id.* at 128. In *Crawley*, the debtors had their accountant prepare the returns, the debtors' motive in seeking to finance the purchase of a home was not inherently improper, and no evidence was presented of fraud or misrepresentation. *Id.* Consequently, the Court concluded that the returns represented a belated, but honest attempt to comply with the tax laws. *Id.*

■ The Court has considered the two lines of cases represented by *Hindenlang* and *Nunez,* and concludes that it is not appropriate to adopt a per se or absolute rule regarding Form 1040s filed after assessment of a tax by the IRS. Such an absolute rule is inconsistent with Congress' failure to use assessment as the triggering event in § 523(a)(1)(B) of the Bankruptcy Code. "Congress specifically excluded any reference to assessment in § 523(a)(1)(B)(i). The Court has to assume that was Congress' intent. (Citation omitted). Further, the IRS's interpretation would lead to absurd results. Effectively, a debtor, for whom the IRS prepares substitute returns, could never discharge taxes. We find nothing in the Bankruptcy Code that would lead us to adopt the IRS's argument." *In re Savage,* 218 B.R. 126, 132 (10th Cir. BAP 1998).

■ Instead, the Court looks to the four-part test originating from the Supreme Court's decision in *Germantown Trust* to determine whether a document is a "return" for purposes of § 523(a)(1)(B). To qualify as a return according to that test, a document must constitute an honest and reasonable attempt to satisfy the requirements of the tax laws. As set forth in *Nunez* and *Crawley,* the inquiry essentially turns on whether the debtor acted in good faith in filing the document, and the good faith inquiry should focus on the debtor's intent at the time that the returns were filed. *In re Nunez,* 232 B.R. at 782–83; *In re Crawley,* 244 B.R. at 127–28.

■ "The government bears the burden to prove, by a preponderance of the evidence, that a particular claim is nondischargeable under § 523(a)." *In re Griffith,* 206 F.3d 1389, 1396 (11th Cir.2000). "The IRS has the ultimate burden of proof as to whether a return has been filed." *In re Nunez,* 232 B.R. at 783. See also *In re Crawley,* 244 B.R. at 125("The burden of proving that the Crawleys' tax liabilities are non-dischargeable in on the USA.").

### Application

■ In this case, the United States introduced the deposition testimony of Donna Ralph. (United States' Exhibit 13). Donna Ralph testified during the deposition that she did not file the tax returns in 1987, 1988, and 1989 because she did not have the money to pay any taxes that might be due. (Deposition transcript, pp. 6, 10, 15, 16). "Well, I was supporting me and my husband and we didn't have any money. It's kind of hard on that type of money." (Deposition transcript, p. 10). Max Ralph was disabled and unable to work during the three years in issue. (Deposition transcript, p. 8). Donna Ralph's income was $16,648 in 1987, $21,111 in 1988, and $17,979 in 1989. (United States' Exhibits 5, 8, and 11). She feared that the IRS would undertake collection efforts and garnish her paycheck if she filed a return without payment of the tax. (Deposition transcript, pp. 10, 16).

Donna Ralph testified that the parties attempted an offer in compromise in September of 1994. (Deposition transcript, p. 6).

In 1995, Donna Ralph learned of a program sponsored by the IRS to encourage people who have not filed income tax returns to "get back into the system." (Transcript of Final Evidentiary Hearing, p. 14). According to an experienced revenue agent for the IRS, the program was designed to "invite people back into the system with little repercussion in a criminal way." (Transcript, p. 14). In explaining a manual related to the program, entitled "Non-filer Communications Resource Guide: Get Back on Track with the IRS,"

the agent testified that one of the "policy statements" of the program provided that non-filers who came forward generally would not be criminally prosecuted for their past delinquencies, and that those non-filers' penalties would be reviewed on a case-by-case basis. (Transcript, p. 15; United States' Exhibit 12).

Donna Ralph's understanding of the non-filers' program was that the IRS would "work with" non-filers who came forward, would not bring any charges against them, and would abate their penalties and interest. (Deposition transcript, pp. 12, 15, and 16).

Donna Ralph consulted with her accountant regarding the non-filers' program and her delinquent tax returns. (Deposition transcript, pp. 13, 15). Her returns for 1987, 1988, and 1989 were prepared by the accountant. (United States' Exhibits 5, 8, and 11). The returns were hand-delivered to the office of the IRS in Fort Lauderdale, Florida.

### Conclusion

The Court has considered the record, and determines that the United States did not satisfy its burden of proving that Donna Ralph did not file income tax returns for the 1987, 1988, and 1989 tax years. The Form 1040s filed by Donna Ralph on February 6, 1995, were honest and reasonable attempts to satisfy the tax laws, and therefore constitute "returns" within the meaning of § 523(a)(1)(B)(i) of the Bankruptcy Code. She filed the returns in response to a program designed to encourage individuals to file delinquent returns, and she sought the assistance of an accountant to prepare the returns. *In re Nunez*, 232 B.R. at 784. No evidence of fraud, misrepresentation, or an improper motive was introduced. *In re Crawley*, 244 B.R. at 128. Donna Ralph's tax obligations for the 1987, 1988, and 1989 tax years should not be excepted from discharge pursuant to § 523(a)(1)(B)(i) of the Bankruptcy Code.

Accordingly:

**IT IS ORDERED** that:

1. Donna Ralph's income tax obligations for 1990 and 1991 are dischargeable pursuant to § 727 of the Bankruptcy Code.

2. The joint tax obligations of the Debtors, Max Ralph and Donna Ralph, for 1992, 1993, and 1994 are dischargeable pursuant to § 727 of the Bankruptcy Code.

3. Donna Ralph's tax obligations for 1987, 1988, and 1989 are dischargeable pursuant to § 727 of the Bankruptcy Code.

4. A separate final judgment will be entered consistent with this opinion.