In re William D. WOODS, Debtor.

**William D. Woods, Plaintiff,**

**v.**

**Internal Revenue Service and Indiana Department of Revenue, Defendants.**

Bankruptcy No. 01–01694–JKC–7. Adversary No. 01–212.

United States Bankruptcy Court, S.D. Indiana, Indianapolis Division.

Aug. 30, 2002.

Michael F. Harper, Indianapolis, IN, for debtor.

Amy Davis, Asst. Attorney General, Indianapolis, IN, for creditor.

### ORDER DENYING UNITED STATES' MOTION FOR SUMMARY JUDGMENT AND GRANTING PARTIAL SUMMARY JUDGMENT IN FAVOR OF DEBTOR

JAMES K. COACHYS, Bankruptcy Judge.

William D. Woods (the "Debtor") commenced an adversary proceeding pursuant to Section 523 of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.* (the "Code"), seeking a determination that certain state and federal income tax liabilities are dischargeable. In response, the United States moved for summary judgment and argued that the subject federal income taxes are excepted from discharge pursuant to 11 U.S.C. § 523(a)(1)(B)(i), which prohibits the discharge of taxes for which the debtor did not file a "return." The Debtor then filed a cross-motion for summary judgment, insisting that the Forms 1040 ("1040s") he filed with the Internal Revenue Code ("IRS"), while admittedly filed only after the IRS involuntarily assessed the taxes against him, constitute "returns" for purposes of · Code § 523(a)(1)(B). The Court, having considered the parties' arguments, now grants partial summary judgment in favor of the Debtor and against the United States. It appears, however, that the United States is free to argue, if it so chooses, that the subject taxes are nondischarge under § 523(a)(1)(C). As such, the Court will issue an order scheduling this matter for further proceedings.

#### Facts

The operative facts are not in dispute. On November 14, 1994, the IRS prepared "substitutes for returns" ("SFRs"), for the years 1988 through 1993 pursuant to 26 U.S.C. § 6020(b). Thereafter, the IRS sent notice of the proposed deficiencies ("30–day Letters") to the Debtor, to which he failed to respond. The IRS then sent

the Debtor formal notice of deficiency letters, ("90–day letters"). The Debtor did not timely file a petition with the United States Tax Court challenging the deficiencies and, on August 21, 1995, the IRS assessed the tax deficiencies against the Debtor after waiting the statutorily-prescribed period.

Following the involuntary assessments, the Debtor executed a tax collection waiver and entered into an installment agreement with the IRS. Then, by letter dated April 25, 1997, the Debtor offered $8,000 to compromise his tax liabilities, an offer which the IRS rejected. Thereafter, on December 8, 1997, the Debtor filed 1040s for the tax years 1988 through 1993. The purported "returns" contained substantially the same information as the SFRs prepared by the IRS. However, two of the 1040s reported increases in the Debtor's tax liability, while two others reported decreases in the Debtor's liability. There appears to be no dispute that the Debtor signed the 1040s under penalty of perjury.

On February 12, 2001, the Debtor filed a voluntary petition under Chapter 7 of the Code and then commenced this adversary proceeding seeking, in part, a determination that his federal tax liabilities for the years 1988 through 1993 are dischargeable pursuant to Code §§ 523(a)(1)(B) and 727(a). As indicated above, both parties have moved for summary judgment. For the reasons stated below, the Court must conclude that the Debtor's federal tax liabilities are not excepted from dischargeable pursuant to § 523(a)(1)(B).

### Discussion and Decision

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). The mere existence of a factual dispute will not bar summary judgment unless "the disputed fact is outcome determinative under governing law." *Egger v. Phillips,* 710 F.2d 292, 296 (7th Cir.1983), *cert. denied,* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983). When a summary judgment motion is made and supported by accompanying affidavits, the party opposing summary judgment may not rely on the mere allegations of his pleadings. Rather, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir.1994) (quoting Fed.R.Civ.P. 56(e)).

In considering a motion for summary judgment, a court must review the record and draw all reasonable inferences in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Del Raso v. U.S.,* 244 F.3d 567, 570 (7th Cir.2001). If the party opposing the motion does not present evidence that would permit the finder of fact to find in his favor on a material question, then the court must enter summary judgment against him. *Waldridge,* 24 F.3d at 920 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson,* 477 U.S. at 249–52, 106 S.Ct. 2505).[1]

---

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core

■ The party seeking to establish an exception to the discharge of a debt bears the burden of proof. *Selfreliance Fed. Credit Union v. Harasymiw (In re Harasymiw)*, 895 F.2d 1170, 1172 (7th Cir.1990). The United States Supreme Court has held that the burden of proof required to establish an exception to discharge is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). To further the policy of providing a debtor a fresh start in bankruptcy, "exceptions to discharge are to be construed strictly against a creditor and liberally in favor of the debtor." *Goldberg Sec., Inc. v. Scarlata (In re Scarlata)*, 979 F.2d 521, 524 (7th Cir.1992) (quoting *In re Zarzynski*, 771 F.2d 304, 306 (7th Cir. 1985)).

Code § 523 enumerates specific exceptions to the dischargeability of debts. As it relates to the present case, § 523 provides:

(a) A discharge under section 727 ... does not discharge an individual debtor from any debt–

(1) for a tax or a customs duty–

(A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed;

(B) with respect to which a return, if required–

(i) was not filed; or

(ii) was filed after the date on which such return was last due, under applicable law or under any extension,

and after two years before the date of the filing of the petition; or

(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.

11 U.S.C. § 523(a)(1). Under this provision, "tax on or measured by income or gross receipts" for the three years prior to the commencement of a bankruptcy case is not dischargeable. *See* 11 U.S.C. § 507(a)(8)(A). Furthermore, only taxes for which a "required return" was filed more than two years before the commencement of the bankruptcy case are dischargeable.

There is no question in this case that the tax liabilities in question arose more than three years before the commencement of the case and that the Debtor's 1040s were filed more than two years before the bankruptcy filing.[2] It would appear, then, that Debtor's federal tax liabilities are not excepted from discharge pursuant to § 523(a)(1)(B). However, the United States maintains that the 1040s filed by the Debtor do not constitute "returns" and that the taxes are therefore excepted from discharge pursuant to § 523(a)(1)(B)(i).

Neither the Bankruptcy Code nor Internal Revenue Code define, "return," and, as a result, a great deal of debate has been generated in the application of § 523(a)(1)(B). Unfortunately, the question raised by the parties' summary judgment motions has not been addressed by the Seventh Circuit, nor resolved by the Supreme Court. In the absence of any binding authority, the Court must choose

proceeding pursuant to 28 U.S.C. § 157.

**2.** The Debtor only moved for declaratory relief under § 523 generally; he did not specify a particular subsection. However, the United States' motion for summary judgment argues that the subject taxes are excepted from discharge pursuant only to § 523(a)(1)(B); no argument under § 523(a)(1)(C) was presented. As indicated later in this opinion, the United States is not precluded from seeking a nondischargeability determination under § 523(a)(1)(C).

between two basic lines of reasoning. *Compare, e.g., In re Hindenlang,* 164 F.3d 1029 (6th Cir.1999), *cert. denied,* 528 U.S. 810, 120 S.Ct. 41, 145 L.Ed.2d 37 (1999), *with In re Nunez,* 232 B.R. 778 (9th Cir. BAP 1999).

■ The United States urges the Court to follow the Sixth Circuit's decision in *Hindenlang,* 164 F.3d at 1029. As here, the debtors in that case filed Forms 1040 only after the IRS had prepared SFRs and assessed tax deficiencies against them. In determining whether the forms should be treated as "returns," the Sixth Circuit utilized the four-part test articulated in *Beard v. Commissioner,* 82 T.C. 766, 1984 WL 15573 (1984), *aff'd,* 793 F.2d 139 (6th Cir.1986).[3] Under this test, in order for a document to be a return, it must (1) purport to be a return; (2) be executed under penalty of perjury; (3) contain sufficient data to allow calculation of tax; and (4) represent an honest and reasonable attempt to satisfy the requirements of the tax law.

In applying the fourth prong of the test, the Sixth Circuit stated:

> A purported return filed too late to have any effect at all under the Internal Revenue Code cannot constitute "an honest and reasonable attempt to satisfy the requirements of the tax law." Once the government shows that a Form 1040

submitted after an assessment can serve no purpose under the tax law, the government has met its burden [under § 523(a)(1)(B)(i)].

*Id.* at 1034. The Court further held that the United States was not required to introduce "particularized evidence" showing that a debtor did not file purported returns in good faith. Rather, the court concluded that "when the debtor has failed to respond to both the thirty-day and the ninety-day deficiency letters sent by the IRS, and the government has assessed the deficiency, then the Forms 1040 serve no tax purpose, and the government thereby has met its burden...." *Id.* at 1034–35.[4]

Based primarily on principles of statutory construction, other courts have rejected the proposition that a Form 1040 filed after an involuntary assessment cannot constitute a "return" as a matter of law:

> The express language of § 523(a)(1)(B)(ii) does not distinguish between returns filed pre-assessment and those filed post-assessment. Congress easily could have conditioned discharge of tax debt on whether a return was filed prior to assessment.... Congress utilized assessment as a trigger for other time periods in the Bankruptcy Code. *See* 11 U.S.C. § 507(a)(8)(A)(ii) and (iii) (priority qualifications for cer-

---

**3.** As noted by the *Hindenlang* Court, the test in *Beard* was derived from two United States Supreme Court cases: *Germantown Trust Co. v. Commissioner* 309 U.S. 304, 60 S.Ct. 566, 84 L.Ed. 770 (1940) and *Zellerbach Paper Co. v. Helvering,* 293 U.S. 172, 55 S.Ct. 127, 79 L.Ed. 264 (1934).

**4.** The court in *Hindenlang* left open the possibility that a Form 1040 submitted after an involuntary assessment might have a tax consequence if under the late return the debtor had a higher tax liability than under the substitute return. *Id.* at 1034, n. 5. Here, the IRS concedes that the amounts set forth in the Debtor's 1040s in excess of the amount

assessed by the IRS is dischargeable under § 523(a)(1)(B)(i). *See In re Hetzler* 262 B.R. 47 (Bankr.D.N.J.2001) (debtor's tax liability is nondischargeable when "return" was filed only after IRS assessment; however, additional amount reported by late-filed return is dischargeable under § 523(a)(1)(B)(ii)). Given the Court's ruling, it need not decide whether this distinction is significant. However, the Court questions whether a Form 1040 can be deemed a "return" only as it relates to the additional tax liability stated therein. In this Court's opinion, it either is or is not a return.

tain allowed unsecured claims of governmental units). The Court disagrees with the unstated premise in *Hindenlang* that the case law, results and analysis under the Internal Revenue Code should, ipso facto, mandate the bankruptcy results for all debtor taxpayers who seek to fit within the limited protection of § 523(a)(1).... To follow the [United States'] argument would undercut one of the principal policy considerations of the Bankruptcy Code to interpret exceptions to discharge narrowly and to provide the honest debtor with a fresh start.

*In re Crawley,* 244 B.R. 121, 127 (Bankr. N.D.Ill.2000); *see also Nunez,* 232 B.R. at 778 (1999) ("We will not read into Section 523(a)(1)(B) the requirement that a debtor must have filed a return prior to an assessment by the IRS"); *In re Savage,* 218 B.R. 126, 132 (10th Cir. BAP 1998) (Section 523(a)(1)(B) "creates a bright-line rule which says that if the debtor's return was filed less than two years pre-petition, the associated taxes are nondischargeable.").

According to these courts, the good faith inquiry under *Beard* should be rather lim-

ited: "The good faith inquiry under Section 523(a)(1)(B) should focus on the debtor's intent at the time the returns are filed. This keeps the inquiry relevant to Section 523(a)(1)(B). A focus on the delay in filing, or the number of missed years is relevant instead to an inquiry under Section 523(a)(1)(C)." *Nunez,* 232 B.R. at 783. In other words, the court's inquiry should be limited to whether the debtor's returns were filed in good faith "on their face," *i.e.,* whether the proper forms were used, whether the forms are facially complete and whether the information contained therein is substantially accurate. *See id.; see also Crawley,* 244 B.R. at 128.[5]

■ Admittedly, the majority of courts that have examined this issue have ruled in favor of the United States and held that a return filed only after an involuntary assessment is no return at all. *See e.g., In re Olson* 261 B.R. 752 (Bankr.M.D.Fla. 2001); *In re Sgarlat,* 271 B.R. 688 (Bankr. M.D.Fla.2001); *In re Mickens,* 214 B.R. 976 (N.D.Ohio 1997), *aff'd* 173 F.3d 855 (6th Cir.1999).[6] Nevertheless, this Court

**5.** The United States argues that *Nunez* is no longer good law in light of the Ninth Circuit's opinion in *In re Hatton,* 220 F.3d 1057 (9th Cir.2000). In that case, the debtor failed to file a Form 1040 following an involuntary assessment, but instead entered into an installment agreement with the IRS. In finding that the subject taxes were not dischargeable, the court held that the debtor had failed to satisfy two prongs of the *Beard* test. First, he had never signed and filed his own Form 1040, nor had he signed the SFR prepared by the IRS. Second, the court found that he had not made an honest and reasonable attempt to comply with the tax laws; the evidence showed that he agreed to cooperate with the IRS only to avoid a wage garnishment and seizure of his property. Given that the debtor in *Hatton* had never filed a return, the Court fails to see how *Hatton* is necessarily inconsistent with *Nunez.* Furthermore, while the Ninth Circuit cited to *Hindenlang* for the *Beard* test, it does not explicitly adopt *Hinden-*

*lang's* bright-line test. As pointed out by one court, "[h]ad the *Hatton* court adopted the *Hindenlang* Rule, it would not have needed to consider whether the Debtor had executed the submissions under penalty of perjury or the Debtor's subjective intent post assessment. The court would have simply determined that the debtor's post assessment submissions could not, as a matter of law, constitute returns under § 523(a)(1)(B)." *In re Rushing,* 273 B.R. 223, 227 (Bankr.D.Ariz.2001).

**6.** The Court notes that at least one permutation of *Hindenlang's* bright-line test has been reported. In *Hetzler,* 262 B.R. at 54, the court stated that "a debtor may successfully assert that he has made an honest and reasonable attempt to comply with the tax law, even after assessment, by providing sufficient facts to substantiate such an effort. For instance, the government's prima facie case could be defeated if the debtor shows that he was incapacitated for a period of time after a return

is not persuaded by these authorities. Rather, the Court is convinced that the "good faith" prong of the *Beard* test requires only a limited inquiry as to the completeness and accuracy of the subject tax forms. Assuming that the forms are, in fact, complete and accurate and that the other three prongs of the *Beard* test are met, then the subject forms constitute "returns" for purposes of Code § 523(a)(1)(B).

The relevant legislative history evidences that Code § 523(a)(1)(B), acting in concert with § 507,[7] was intended to balance several competing interests:

The bill recognizes that the tax law places numerous restrictions on the collection of taxes. These limitations, which do not encumber private creditors, often complicate the collection of prepetition taxes S.2266 also recognizes that tax collection rules for bankruptcy cases have a direct impact on the integrity of Federal, State and local tax systems. To the extent that debtors in bankruptcy are freed from paying their tax liabilities, the burden of making up the lost revenues must be shifted to other taxpayers.

A three-way tension thus exists among (1) general creditors, who should not have the funds available for the payment of debts exhausted by an excessive accumulation of taxes for past years; (2) the debtor, whose "fresh start" should likewise not be burdened with such an accumulation; and (3) the tax collector, who should not lose taxes which he has not had reasonable time to collect or which the law has restrained him from collecting.

STAFF OF SENATE COMM. ON FINANCE, 95TH CONG, REPORT ON BANKRUPTCY REFORM ACT

OF 1978, (Comm. Print 1978). Even the *Hindenlang* court acknowledges that:

[Section 523(a)(1)(B) ] appears to serve two purposes: First the requirement of a two-year waiting period after filing a late return but before seeking discharge prevents a debtor who has ignored the filing requirements of the Internal Revenue Code from waiting until the eve of bankruptcy, filing a delayed but standard tax return form, and seeking discharge the next day. It is, in a sense, a provision affording notice and an opportunity to act, giving the IRS time to seek payment by levy or court proceeding. Second, § 523 forbids discharge when the debtor has acted fraudulently or in a manner calculated to evade or defeat a tax. This corresponds with the notion that "good faith and candor are necessary prerequisites to obtaining a fresh start."

*Hindenlang* 164 F.3d at 1032 (quoting *Industrial Ins. Servs., Inc. v. Zick (In re Zick)*, 931 F.2d 1124, 1129 (6th Cir.1991)).

■ Based on the foregoing, the Court must conclude that a definition of "return" that includes tax forms filed only after an involuntary assessment is consistent with the intent behind § 523(a)(1)(B)(i). The primary goal served by § 523(a)(1)(B)(i), *i.e.,* allowing the IRS sufficient time to collect the subject tax liabilities from a delinquent taxpayer debtor and possibly to better its position prepetition vis-à-vis the taxpayer's property, is met even when the returns are filed post-assessment (assuming that the requirement of § 523(a)(a)(B)(ii) are also met). To rule in favor of the United States in this instance

---

was due, during which time an assessment by the IRS was made, and then attempted to comply as soon as he was able to do so."

7. Section 507 of the Code sets forth the relative priorities of various classes of expenses and claims, giving "eighth" priority to certain tax claims.

would, however, significantly compromise § 523(a)(1)(B)'s other acknowledged goals.

Several of the courts which have ruled in favor of the United States on this issue have suggested that § 523(a)(1)(B) should not be interpreted to "immunize non-reporting debtors who, once caught, seek to discharge their discovered tax obligations along with other debts in bankruptcy." *See, e.g., Mickens* 214 B.R. at 978 (quoting *In re Haywood,* 62 B.R. 482, 486 (Bankr. N.D.Ill.1986)). This Court agrees that only the honest debtor should receive a fresh start in bankruptcy and that taxpayers should not be encouraged, through the benefits of bankruptcy, to frustrate the IRS (at great expense) by waiting until after assessment to file tax returns. However, there is nothing in the express language of § 523, nor in its legislation history, that suggests that § 523(a)(1)(B) was designed to address these concerns. In this Court's opinion, § 523(a)(1)(C) provides an adequate remedy for the United States in dealing with a taxpayer who fails to satisfy the tax laws by filing a timely return. As previously quoted herein, this section provides an exception to discharge for those taxes "with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax."

This is not to say that the government will prevail in every "late-filed return" case brought under § 523(a)(1)(C). The court is required to look at the totality of the circumstances and, at least in this circuit, must find that the debtor (1) knew that he had a tax duty under the law, and (2) voluntarily and intentionally attempted to violate that duty. *In re Birkenstock,* 87 F.3d 947, 952 (7th Cir.1996) (citing *In re Bruner* 55 F.3d 195 (5th Cir.1995)). Furthermore, there is some debate as to whether a taxpayer/debtor must engage in an "affirmative" act, or in other words, "an act of commission" to be found liable under § 523(a)(1)(C). In this circuit, however, there is support for the proposition that liability can be found even when the acts in question are acts of *omission.* For instance, in *Birkenstock,* the 7th Circuit cites approvingly to *In re Toti* 24 F.3d 806 (6th Cir.1994), in which the Sixth Circuit held that acts of omission, *e.g.,* the nonpayment of taxes, coupled with a failure to file a return, can constitute a willful attempt to evade or defeat a tax. *See also Smith v. United States,* 202 B.R. 277, 279 (S.D.Ind. 1996) ("Section 523(a)(1)(C) does not require proof of affirmative act"). Based on these holdings, the United States can plausibly argue that a taxpayer/debtor who fails to file a tax return, wholly ignores the assessment process, and only begins to "cooperate" with the IRS when the threat of collection is imminent can be held liable under § 523(a)(1)(C).[8]

 In the present case, the undisputed evidence indicates that the Debtor filed the proper forms and that his 1040s were facially complete and accurate. In the absence of any other evidence, the Court must conclude that the Debtor's 1040s, on their face, constitute an honest and reasonable attempt to satisfy federal tax law. Since there is no dispute that the other three prongs of the *Beard* test have been met, the Court finds that the Debtor's 1040s for tax years 1988 through and including 1993 constitute "returns" for bankruptcy purposes and that his federal tax liabilities for those years are not excepted from discharge pursuant to § 523(a)(1)(B).

---

8. The Court notes that the willful failure to file a timely return is a misdemeanor under 26 U.S.C. § 7203. The late filing of a return or a document purporting to be a return does not alleviate liability. Failure to file a timely return also subjects a taxpayer to a 5% penalty per month up to a maximum of 25% of the taxes owed. 26 U.S.C. § 6651(a)(1).

Accordingly, the Court grants summary judgment to this extent in favor of the Debtor and against the United States. However, as previously noted, there is nothing to necessarily preclude the United States, if it so chooses, from proceeding against the Debtor under § 523(a)(1)(C). The Court will issue an order scheduling this matter for a status conference to discuss how the United States intends to proceed.

IT IS SO ORDERED.